JENNER & BLOCK LLP
Andrew J. Thomas (SBN 159533)
ajthomas@jenner.com
Alice S. Kim (SBN 317479)
akim@jenner.com
Camila Connolly (SBN 323996)
cconnolly@jenner.com
633 West Fifth Street, Suite 3600
Los Angeles, CA 90071
Telephone:  (213) 239-5100
Facsimile:  (213) 239-5199

Attorneys for Plaintiff
WARNER BROS. ENTERTAINMENT INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARNER BROS. ENTERTAINMENT INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>RANDOM TUESDAY, INC., a Connecticut corporation, dba HOGWARTS RUNNING CLUB, CHILTON RUNNING CLUB, and POTTERHEAD RUNNING CLUB; BRIAN BIGGS, an individual; and DAWN BIGGS, an individual,<br><br>                    Defendants. | Case No. 2:20-cv-02416-JAK-PLA<br><br>The Honorable John A. Kronstadt<br><br>**PLAINTIFF WARNER BROS. ENTERTAINMENT INC.'S OPPOSITION TO DEFENDANT RANDOM TUESDAY, INC.'S MOTION TO DISMISS COMPLAINT**<br><br>[Opposition to Brian and Dawn Biggs' Motion to Dismiss Complaint; Request for Judicial Notice; and Declaration of Alice S. Kim with Exhibits A-B, filed concurrently]<br><br>Hearing Date:     October 26, 2020<br>Hearing Time:    8:30 a.m.<br>Courtroom:         10B<br><br>Action Filed:  March 13, 2020 |

---

WARNER BROS.' OPPOSITION TO RANDOM TUESDAY'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................. 1

II.   FACTUAL BACKGROUND ........................................................... 2

    A.   Warner Bros.' Intellectual Property. ..................................... 2

        1.   The *Harry Potter* and *Gilmore Girls* Entertainment
        Franchises. ................................................................... 2

        2.   Warner Bros.' Trademark and Copyright
        Registrations. ............................................................... 3

    B.   Defendants' Alleged Infringing Activities. ........................... 4

    C.   Defendants' Mischaracterization of the Parties'
    Communications. .................................................................. 5

III.  ARGUMENT ................................................................................... 6

    A.   Notice Pleading Requirements and Standards for Rule 12
    Motions. ................................................................................ 6

    B.   Warner Bros.' Trademark Claims Are Sufficiently Pled. ............... 7

        1.   Warner Bros.' Trademark Infringement and
        Counterfeiting Claims Are More Than Adequately
        Alleged................................................................................ 7

        2.   Warner Bros.' Claims for False Designation of
        Origin and Unfair Competition Claim, Common
        Law Unfair Competition, and Common Law
        Trademark Infringement All Satisfy Rule 12.................. 9

        3.   Defendants' Trade Dress Arguments, Including
        Those Based on the *Dastar* Decision, Are
        Unsupported and Legally Unsound. ................................ 11

    C.   Warner Bros.' Federal and State Dilution Claims Are
    Sufficiently Pled.................................................................. 16

    D.   Warner Bros.' False Advertising Claims Are Sufficiently
    Pled...................................................................................... 19

E.   Warner Bros.' Copyright Infringement Claim Is Sufficiently Pled.................................................... 19

F.   Defendants' Alternative Motions Under Rule 12 Should Be Denied.......................................................... 23

IV.   CONCLUSION ........................................................... 24

WARNER BROS.' OPPOSITION TO RANDOM TUESDAY'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amazon Content Services, LLC v. Set Broadcast, LLC*,
   2019 WL 7856766 (C.D. Cal. Nov. 25, 2019) ................................................. 20

*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles*,
   648 F.3d 986 (9th Cir. 2011) ............................................................................... 6

*Beery v. Hitachi Home Electronics (America), Inc.*,
   157 F.R.D. 477 (C.D. Cal. 1993) ...................................................................... 24

*Blizzard Entertainment, Inc. v. Lilith Games (Shanghai) Co.*,
   149 F. Supp. 3d 1167 (N.D. Cal. 2015) ...................................................... 22, 23

*Brighton Collectibles, Inc. v. RK Texas Leather Manufacturing*,
   923 F. Supp. 2d 1245 (S.D. Cal. 2013) ............................................................ 12

*Bureerong v. Uvawas*,
   922 F. Supp. 1450 (C.D. Cal. 1996) ................................................................ 24

*Comedy III Productions, Inc. v. New Line Cinema*,
   200 F.3d 593 (9th Cir. 2000) ............................................................................ 15

*Conan Properties, Inc. v. Conans Pizza*,
   752 F.2d 145 (5th Cir. 1985) ............................................................................ 14

*Dastar Corp. v. Fox Broadcasting Co.*,
   539 U.S. 23 (2003) .................................................................... 12, 13, 15, 16

*DC Comics, Inc. v. Filmation Associates*,
   486 F. Supp. 1273 (S.D.N.Y. 1980) ................................................................. 14

*DC Comics, Inc. v. Powers*,
   465 F. Supp. 843 (S.D.N.Y. 1978) ................................................................... 14

*DC Comics v. Kryptonite Corp.*,
   336 F. Supp. 2d 324 (S.D.N.Y. 2004) .............................................................. 14

*Fourth Estate Public Benefit Corp. v. Wall-Street.Com*,
   139 S. Ct. 881 (2019) .................................................................................. 19, 20

WARNER BROS.' OPPOSITION TO RANDOM TUESDAY'S MOTION TO DISMISS

*GeoData Systems Management, Inc. v. American Pacific Plastic Fabricators, Inc.*,
    2015 WL 12731920 (C.D. Cal. Sept. 21, 2015) ................................................... 8

*Hybrid Promotions, LLC v. Zaslavsky*,
    2016 WL 10988656 (C.D. Cal. Oct. 5, 2016) ............................................. 20, 21

*In-N-Out Burgers v. Smashburger IP Holder LLC*,
    2017 WL 10402610 (C.D. Cal. Dec. 21, 2017) ........................................... 17

*Ketab Corp. v. Mesriani & Associates*,
    2015 WL 5050512 (C.D. Cal. Aug. 26, 2015) ................................................... 17

*Lepton Labs, LLC v. Walker*,
    55 F. Supp. 3d 1230 (C.D. Cal. 2014)............................................................ 12

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,
    633 F.3d 1158 (9th Cir. 2011)................................................................... 18

*Lucasfilm Ltd. LLC v. Ren Ventures Ltd.*,
    2018 WL 2392963 (N.D. Cal. Apr. 24, 2018) ..................................... 11, 14, 15

*Malibu Textiles, Inc. v. Label Lane International, Inc.*,
    922 F.3d 946 (9th Cir. 2019) ........................................................... 7, 20

*Metro Publishing, Ltd. v. San Jose Mercury News, Inc.*,
    861 F. Supp. 870 (N.D. Cal. 1994)................................................................ 17

*Neilson v. Union Bank of California, N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003)............................................................. 23

*Nintendo of America, Inc. v. Storman*,
    2020 WL 2463374 (C.D. Cal. Jan. 15, 2020)................................................... 20

*Nirvana, LLC v. Mark Jacobs International, LLC*,
    2019 WL 7817082 (C.D. Cal. Nov. 8, 2019) ................................................... 16

*Paramount Pictures Corp. v. Axanar Productions, Inc.*,
    2016 WL 2967959 (C.D. Cal. May 9, 2016)............................................. 21, 22

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
    167 F. Supp. 2d 1114 (C.D. Cal. 2001)............................................................. 20

*Processed Plastics Co. v. Warner Communications, Inc.*,
    675 F.2d 852 (7th Cir. 1982) ............................................................... 14

*RDF Media Ltd. v. Fox Broadcasting Co.*,
    372 F. Supp. 2d 556 (C.D. Cal. 2005) ................................................................. 15

*Sanrio, Inc. v. I&I Sportswear*,
    2009 WL 10700304 (C.D. Cal. July 24, 2009) ................................................ 7, 8

*Solid 21, Inc. v. Breitling USA, Inc.*,
    512 F. App'x 685 (9th Cir. 2013) .......................................................................... 11

*Sony Pictures Entertainment, Inc. v. Fireworks Entertainment Group, Inc.*,
    156 F. Supp. 2d 1148 (C.D. Cal. 2001) ................................................ 9, 10, 11

*Sugar Factory, LLC v. Glossy Pops, LLC*,
    2019 WL 2994202 (C.D. Cal. July 8, 2019) ...................................................... 17

*Sushi Nozawa, LLC v. HRB Experience*,
    2020 WL 1529379 (C.D. Cal. Mar. 31, 2020) ................................................... 11

*UL LLC v. Space Chariot Inc.*,
    250 F. Supp. 3d 596 (C.D. Cal. 2017) .................................................................. 9

*Universal City Studios, Inc. v. J.A.R. Sales, Inc.*,
    1982 WL 1279 (C.D. Cal. Oct. 20, 1982) ...................................................... 6, 14

*Viacom International v. IJR Capital Investments LLC*,
    891 F.3d 178 (5th Cir. 2018) ........................................................................ 13, 14

*Warner Bros. Entertainment Inc. v. X One X Productions*,
    840 F.3d 971 (8th Cir. 2016) ........................................................................ 15, 16

*Warner Bros. Entertainment v. Global Asylum, Inc.*,
    2012 WL 6951315 (C.D. Cal. Dec. 10, 2012) .................................................. 10

*Warner Bros. v. Gay Toys, Inc.*,
    658 F.2d 76 (2d Cir. 1981) ............................................................................ 6, 14

STATUTES

15 U.S.C. § 1115 ................................................................................................................. 8

15 U.S.C. § 1125 ......................................................................................................... *passim*

California Business & Professions Code § 14247 ................................................... 16

Trademark Dilution Revision Act of 2006 .............................................................. 18

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 8 ...................................................................*passim*

Federal Rule of Civil Procedure 12 .................................................................*passim*

WARNER BROS.' OPPOSITION TO RANDOM TUESDAY'S MOTION TO DISMISS

# I.     INTRODUCTION

In this Motion to Dismiss—nominally filed only by defendant Random Tuesday, Inc. but joined by defendants Brian Biggs and Dawn Biggs in its entirety[1]—Defendants unapologetically proclaim that their business "has manifested [their] love for the *Harry Potter* book and film series, as well as the *Gilmore Girls* series," RT Mot. 1, and in so doing concede that all of the trademarks and other indicia that are the subject of the Complaint, and on which their business is built, are direct references to, and thus seek to trade off of, the well-known *Harry Potter* and *Gilmore Girls* entertainment franchises and their unparalleled goodwill.

Rather than argue that when they use terms such as "Potterhead" or "Chilton Academy" they are not referring to Warner Bros.' famous entertainment products (because they cannot), and apparently hoping to excuse their parasitic commercial activity with ill-conceived technicalities, they instead seek to convince the Court that Warner Bros.' 52-page, 150-paragraph Complaint is insufficiently detailed and fails adequately to allege the 10 causes of action set forth therein.

Importantly, Defendants do not demonstrate—and make no real attempt to demonstrate—that any of the claims in the Complaint completely fail to allege a legally cognizable, factually plausible cause of action.  Indeed, Defendants mostly ignore what the Complaint actually alleges and instead devote their papers to speculating about factual scenarios well beyond the scope of the pleadings and apparently seek an advisory ruling that a claim cannot be stated *to the extent* the Complaint does not provide certain information or *to the extent* any of Defendants' alleged conduct falls outside the statute of limitations period.

Warner Bros.' allegations go far beyond the minimum notice pleading

---

[1] *See* Def. Random Tuesday's Mem. in Supp. of Mot. to Dismiss ("RT Mot.") 20, ECF No. 22-1; *see also* Defs. Brian and Dawn Biggs' Mem. in Supp. of Mot. to Dismiss ("Biggs Mot.") 3, 7-9, ECF No. 23-1.  For ease of reference, Warner Bros. refers to "Defendants" collectively herein.

required by Rule 8 of the Federal Rules.  They certainly provide enough factual detail for Defendants to reasonably prepare a responsive pleading, as required by Rule 12(e).  Accordingly, the Motion, which combines requests for dismissal with requests to strike and for a more definite statement, should be denied in its entirety.

## II.      FACTUAL BACKGROUND

**A.      <u>Warner Bros.' Intellectual Property.</u>**

### 1.      The *Harry Potter* and *Gilmore Girls* Entertainment Franchises.

Since 1997, the world has been captivated by the fictional magical universe created by author J.K. Rowling, and since 2001, this magical universe has been brought to visual life by Warner Bros.  Complaint ("Cmplt.") ¶ 2, ECF No. 1.  In addition to eight blockbuster motion pictures tracking the entire book series, as well as related *Fantastic Beasts* motion pictures set in the same fictional universe, Warner Bros. has created a multitude of related entertainment products, services, and experiences, all coming together to create a franchise of unparalleled breadth and value.  *Id.* ¶¶ 2, 28-31.  The elements of the *Harry Potter* universe—including, among many others, wizards, Muggles, magical creatures, wands, and spells—are immensely popular and are strongly associated with both Ms. Rowling's books and Warner Bros.' entertainment products—its motion pictures—as well as the wide variety of licensed goods and services related to the *Harry Potter* franchise, spanning theme park realms, merchandise, games, events, and other products and services offered over the past two decades.  *See id.* ¶¶ 3, 31-38.  The famous title character at the center of this universe is, of course, Harry Potter, and many of his and his friends' adventures take place at the famous Hogwarts School of Witchcraft and Wizardry.  *Id.* ¶ 3.

Similarly, since 2000, countless fans have followed the exploits (and fast dialogue) of Lorelai Gilmore and her daughter Lorelai "Rory" Gilmore in the television series *Gilmore Girls*.  *Id.* ¶ 4.  In addition to the original series, which ran for seven seasons, as well as the recent Netflix revival, Warner Bros. has

created or licensed a multitude of products, services, and experiences, all coming together to create another popular franchise with a significant fan following, enduring even today.  *Id.* ¶¶ 4, 56-57.  The elements of the *Gilmore Girls* universe—including, among many others, the two titular Gilmores, their home in the fictional town of Stars Hollow, Rory Gilmore's fictional high school Chilton Academy, and Lorelai Gilmore's Dragonfly Inn—are also famous and are strongly associated with Warner Bros.' wide variety of goods and services related to the *Gilmore Girls* franchise.  *See id.* ¶¶ 4, 56-58.

>    **2.**     **Warner Bros.' Trademark and Copyright Registrations.**

Since the release of the first *Harry Potter* film in 2001, Warner Bros. "has used in commerce and owns all right, title, and interest in numerous distinctive and famous trademarks derived from the names of the fictional people, places, and things depicted in the *Harry Potter* franchise": these marks include, among many others, HARRY POTTER, HOGWARTS, GRYFFINDOR, DUMBLEDORE, and PLATFORM 9 ¾ (collectively, the "HP Marks").  Cmplt. ¶ 39.  The HP Marks consist of "arbitrary" or "fanciful" terms that are "inherently distinctive trademarks and symbols" of the franchise and, given Warner Bros.' "long and extensive use," have "long been recognized by the public as uniquely associated" with Warner Bros. and the franchise.  *Id.*  In addition, Warner Bros. owns "copyright registrations … for each of the *Harry Potter* films" and "for multiple Style Guides containing images from the *Harry Potter* films and images of authorized merchandise": these copyrights cover "numerous distinctive visual elements" from the motion pictures, including the Hogwarts crest, the Deathly Hallows Triangle Design, the Platform 9 ¾ emblem, and so on.  *Id.* ¶¶ 53-55.

Similarly, Warner Bros. "owns exclusive rights in distinctive and famous trademarks and trade dress derived from the characters, places, and things depicted in the *Gilmore Girls* television series": these marks include, among others, GILMORE GIRL, CHILTON ACADEMY, and LUKE'S DINER (collectively, the

"GG Marks"). *Id.* ¶ 58.  The GG Marks consist of "arbitrary" or "fanciful" terms that are "inherently distinctive trademarks and symbols" of the franchise and, given Warner Bros.' "long and extensive use," and have "long been recognized by the public as uniquely associated" with Warner Bros. and the franchise.  *Id.*  In addition, Warner Bros. owns "copyright registrations for each episode of the *Gilmore Girls* television series" and for a Style Guide "containing images and logos" from the series: these copyrights cover "numerous distinctive visual elements" from the series.  *Id.* ¶ 62.[2]

**B.   Defendants' Alleged Infringing Activities.**

Defendants for years have been building up a commercial business based on infringing use of Warner Bros.' trademarks and copyrighted images.  They created and operate two "virtual running club" businesses deliberately branded with Warner Bros.' intellectual property: (1) "Hogwarts Running Club," changed last year to "Potterhead Running Club," and (2) "Chilton Running Club."  *See* Cmplt. ¶¶ 5, 66.  Club members pay registration fees to enter various themed races, and receive race medals and other goods in exchange.  *Id.* ¶ 65.  Through their online store, Defendants also sell infringing merchandise that displays Warner Bros.' protected marks and copyrighted images and that is notably similar to Warner Bros.' own merchandise.  In many cases, Defendants' infringing merchandise directly competes with licensed *Harry Potter* and *Gilmore Girls* merchandise.  *See id.* ¶¶ 7, 63-65; *see also generally id.* ¶¶ 66-91.[3]

---

[2] In all, the Complaint identifies 84 trademark registrations, their respective registration numbers and dates, and the International Classes in which they have been registered.  *Id.* ¶¶ 41-51, 59-60.  It also identifies 15 copyright registrations, as well as their respective registration numbers and dates.  *Id.* ¶¶ 53-54, 62.

[3] For example, Defendants prominently featured the famous, registered "Platform 9 ¾" mark as the basis for one of their race medals, employing a virtually identical font and color scheme.  *Id.* ¶¶ 69, 84.  As another example, Defendants used the famous, registered Deathly Hallows Triangle Design, copying the design and shape identically, and even quoting the famous last sentence of the *Harry Potter* book

Defendants have designed their web presence, race events, merchandise, and entire business model to appeal to and attract fans of the two Warner Bros. franchises through the use of Warner Bros.' intellectual property.  That, however, is a privilege reserved to Warner Bros. and its authorized licensees.  Just as a tavern owner would not be justified in branding her establishment "Hogwarts Bar & Grill" to draw customers who are *Harry Potter* enthusiasts, so Defendants, too, have no right to brand their commercial ventures Hogwarts Running Club, Potterhead Running Club, or Chilton Running Club or sell infringing merchandise.[4]

## C.   Defendants' Mischaracterization of the Parties' Communications.

Contrary to Defendants' accusation, Warner Bros. has never sought to "shut down" Random Tuesday.  RT Mot. 2.  Warner Bros. did devote many months to negotiating with Defendants in an effort to persuade them to cease their infringement.  Defendants ignore these significant efforts, falsely asserting that Warner Bros. merely asked for a name change and followed up with one letter.  *Id.* 1-2.  In fact, Warner Bros. repeatedly raised and explained in detail its concerns about Defendants' infringing use of its intellectual property in all aspects of their business and sought to resolve this dispute through multiple letters and telephone calls and in an in-person meeting.  Cmplt. ¶ 9.  When Defendants, however, unilaterally changed "Hogwarts Running Club" to "Potterhead Running Club" and refused to discontinue their infringing activities, Warner Bros. responded with two letters, stating unequivocally that it considered the new club name, as well as the

series: "All was well."  *Id.* ¶ 70.

[4] Defendants also boast about their charitable donations, citing purported facts that are outside the pleadings and not relevant to the pending motions. RT Mot. 1-2; Biggs Mot. 1.  In the interest of completeness, however, any recitation of how Random Tuesday distributes of its substantial revenues should note that Brian and Dawn Biggs have reported to the U.S. government that they personally profit from their business to the tune of $200,000 a year.  *See* Request for Judicial Notice, Ex. B at 7 (disclosing annual salaries of $100,000 apiece in 2018).

1   ongoing merchandise sales, infringing and that Defendants were acting "at [their]
2   own risk."

3   ## III.    ARGUMENT

4          It is well established that elements from entertainment products such as
5   films, television programs, and comic books are protected under the Lanham Act.
6   *See, e.g.*, *Warner Bros. v. Gay Toys, Inc.*, 658 F.2d 76, 78 (2d Cir. 1981).  The
7   extensive consumer goodwill associated with these entertainment products creates
8   a robust market for licensing across a broad range of goods and services.  As the
9   Central District has previously held, "[i]t is common practice in the entertainment
10  industry to exploit commercially the popularity of well-known motion picture and
11  television personalities and characters in connection with a wide range of
12  merchandise, and *the public has come to expect such exploitation*."  *Universal City
13  Studios, Inc. v. J.A.R. Sales, Inc.*, 1982 WL 1279, at *5 (C.D. Cal. Oct. 20, 1982)
14  (emphasis added).  This is exactly the business that Warner Bros. has engaged in
15  with its *Harry Potter* and *Gilmore Girls* franchises, and that it seeks to vouchsafe
16  through this litigation.  *See* Cmplt. ¶¶ 1-4, 31-38, 57.  As demonstrated below,
17  Defendants' Motion is legally defective in its entirety and should be dismissed.

18  **A.    Notice Pleading Requirements and Standards for Rule 12 Motions.**

19         Under the notice pleading regime embodied in the Federal Rules of Civil
20  Procedure, a plaintiff is not required to plead the evidentiary detail that would be
21  required on summary judgment or at trial.  Instead, all that is required is a "short
22  and plain statement of the claim showing that the pleader is entitled to relief."  Fed.
23  R. Civ. P. 8(a)(2).  On a Rule 12 motion to dismiss, the Court must accept as true
24  all of the factual allegations in the complaint, construe the complaint "in the light
25  most favorable" to the plaintiff, and "draw[] all reasonable inferences in favor of
26  the plaintiff."  *Association for Los Angeles Deputy Sheriffs v. County of Los
27  Angeles*, 648 F.3d 986, 991 (9th Cir. 2011).[5]

28  _____
    [5] A more complete discussion of the pleading standards applicable to the various

**B.**   <u>**Warner Bros.' Trademark Claims Are Sufficiently Pled.**</u>

There is no question that Warner Bros. has stated valid trademark claims, as the Complaint lists some 84 trademark registrations and spells out their respective registration numbers and dates, the International Classes in which they have been registered, and the types of products and services the registrations cover. *See* Cmplt. ¶¶ 41-51, 59-60. Defendants cannot dispute that Warner Bros. has alleged the essential elements of the claims, and they cannot deny that they are fully on notice of the nature of the claims, the trademarks at issue, and the nature of Defendants' conduct that is being challenged. At this stage in the case, that is all that is required. *See, e.g.*, *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 952 (9th Cir. 2019) ("a complaint's factual allegations need not be detailed").

**1.**   **Warner Bros.' Trademark Infringement and Counterfeiting Claims Are More Than Adequately Alleged.**

Defendants nonetheless assert that the identified 84 trademark registrations—and 91 paragraphs of detailed factual allegations—are not enough. Defendants argue that Warner Bros. must detail every single trademark that *might* be at issue, every single instance of alleged infringement, dates for each instance of alleged infringement, dates of first use in commerce of each and every mark, and so on—or face immediate dismissal at the pleading stage. *See* RT Mot. 4-5. But this is not the law.

Defendants' Motion relies almost entirely on its view that Warner Bros.' use of phrases like "among others" after a detailed list of trademarks should lead to dismissal. However, courts consistently have deemed representative lists of registrations in intellectual property disputes to constitute sufficient notice pleading under Rule 8. *See, e.g.*, *Sanrio, Inc. v. I&I Sportswear*, 2009 WL 10700304, at *4

---

motions lodged by Defendants can be found in Section II.A of Warner Bros.' concurrently-filed Opposition to Brian and Dawn Biggs' Motion to Dismiss (the "Biggs Opposition"), which is incorporated by reference herein. Biggs Opp'n 3-4.

(C.D. Cal. July 24, 2009) (complaint that included representative lists of trademark and copyright registrations and generally used language like "including, but not limited to" and "among many others" was found to be "well-pleaded").[6]

The sole case Defendants cite is inapposite. *See* RT Mot. 4. In *GeoData Systems Management, Inc. v. American Pacific Plastic Fabricators, Inc.*, 2015 WL 12731920 (C.D. Cal. Sept. 21, 2015), the plaintiff *admitted* that it did not own a valid registered trademark. *Id.* at *10. Here, by contrast, Warner Bros. has identified 84 trademark registrations for which it is the owner. Cmplt. ¶¶ 39, 42-51, 58, 60. Registration is prima facie evidence of ownership of a valid mark. *See* 15 U.S.C. § 1115(a). Defendants also assert that Warner Bros. has "provide[d] no timeline at all regarding RTI's alleged uses of its marks" and has failed to allege priority. RT Mot. 4. The Complaint, however, expressly alleges that Warner Bros.' use of its own intellectual property began "long before the[] use by Defendants," Cmplt. ¶¶ 63, 107, and on numerous occasions identifies the approximate time when Defendants engaged in various acts of infringement, *e.g.*, *id.* ¶¶ 73, 78, 80-86; *see also* Biggs Opp'n 20-21. To the extent Defendants desire more evidentiary detail, discovery is the appropriate vehicle to obtain such information, not a motion to dismiss or a motion for a more definite statement.[7]

Defendants also assert that Warner Bros. does not have registrations for "D.A.," referring to "Dumbledore's Army," or for "Platform 9 ¾." RT Mot. 5. This assertion directly contradicts the express allegations of the Complaint. *E.g.*, Cmplt. ¶ 69 ("Defendants make prominent use of the famous, registered 'Platform 9 ¾' mark"); *id.* ¶ 71 ("Defendants used the registered mark for 'Dumbledore's Army'" and used "an identical font and the same stylized letters"); *id.* ¶ 51

---

[6] *See Sanrio* Complaint ¶¶ 6-8, 11, 15, 16, 18-19, 22, 27-30, 32, 38, *Sanrio, Inc. v. I&I Sportswear*, No. CV08-06291 (filed Sept. 24, 2008) (accessible on Pacer).

[7] This is particularly true where, as here, Defendants are best positioned to know all the things they did, all the merchandise they created and sold, all the themed events they held and promoted, and all the marks and copyrighted images they used.

WARNER BROS.' OPPOSITION TO RANDOM TUESDAY'S MOTION TO DISMISS

(identifying registration for DUMBLEDORE'S ARMY).

Defendants also incorrectly argue that Warner Bros. has not sufficiently pled its counterfeiting claim.  As Defendants' cited case recognizes, a counterfeit is a spurious mark either "identical with" *or* "substantially indistinguishable from" a registered mark.  *UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596, 607 (C.D. Cal. 2017).  Defendants contend that Warner Bros.' allegations regarding Defendants' "nearly identical" use of its intellectual property "is an admission that it is not actually identical," thereby precluding a counterfeiting claim.  RT Mot. 5. But the Complaint also points to "identical" or "the same" or "substantially indistinguishable" designs, shapes, and color schemes.  *E.g.*, Cmplt. ¶¶ 71, 74, 75, 79.  And the natural meaning of the words "nearly identical" clearly suggest Defendants' uses are "substantially indistinguishable" from Warner Bros.' registered marks.  *E.g.*, *id.* ¶¶ 66, 69, 70, 79, 84, 86.  That is all that is required of Warner Bros. at this stage.[8]

**2.    Warner Bros.' Claims for False Designation of Origin and Unfair Competition Claim, Common Law Unfair Competition, and Common Law Trademark Infringement All Satisfy Rule 12.**

In seeking to dismiss Warner Bros.' other trademark claims, Defendants largely rehash their earlier arguments.  They begin by citing an inapposite case to argue that Warner Bros. has not "allege[d] what its claimed marks *are*" and therefore has failed to state a claim.  RT Mot. 6 (citing *Sony Pictures Entm't, Inc. v. Fireworks Entm't Grp., Inc.*, 156 F. Supp. 2d 1148, 1162 (C.D. Cal. 2001), *vacated pursuant to settlement*, 2002 WL 32387901 (C.D. Cal. Nov. 5, 2002)). This reliance on *Sony* is misplaced for two reasons: first, Defendants' cherry-picked quotation actually arose in the summary judgment context, and second, the

---

[8] Defendants also raise a misguided and unsupported statute of limitations argument in this section of their Motion, which is addressed in Section II.D of the Biggs Opposition.  *See* Biggs Opp'n 16-21.

WARNER BROS.' OPPOSITION TO RANDOM TUESDAY'S MOTION TO DISMISS

plaintiffs in that case had already "concede[d] that there [was] no infringement of an actual mark." *Sony*, 156 F. Supp. 2d at 1152-53, 1162. Warner Bros. has provided substantial information regarding its trademarks, including 84 registrations, their registration numbers and dates, the International Classes in which they have been registered, and the types of products and services the registrations cover. *See* Cmplt. ¶¶ 41-51, 59-60. This is not, as Defendants claim, "inadequate to inform Defendants" of the marks and claims at issue. RT Mot. 7.

Defendants again suggest that Warner Bros. has not alleged priority of use. RT Mot. 7-8. This is demonstrably false. Warner Bros. expressly alleged that it made use of its own intellectual property "long before" Defendants' infringing use. *See* Cmplt. ¶¶ 63, 107. In addition, Warner Bros. has provided registration dates (and corresponding numbers) for 84 registrations, many of which pre-date Random Tuesday's formation. *Id.* ¶¶ 41-51, 59-60. Defendants' assertion, then, that the Complaint "never states the dates of first use for *any* of the marks it claims common law rights to" is both irrelevant and false. RT Mot. 7.

Defendants next embark on a confusing analogy to the descriptive or generic term "apple" in an attempt to argue that Warner Bros. has not adequately alleged that the HP and GG Marks are distinctive and therefore protectable. RT Mot. 8-9. As a threshold matter, Warner Bros. already has alleged that its marks are "arbitrary" or "fanciful" terms that are "inherently distinctive trademarks and symbols" of the *Harry Potter* and *Gilmore Girls* franchises, and given Warner Bros.' "long and extensive use," these marks have "long been recognized by the public as uniquely associated" with Warner Bros. and its entertainment franchises. Cmplt. ¶¶ 39, 58.[9] Warner Bros. also has consistently alleged distinctiveness

---

[9] Moreover, the Complaint alleges marks that are coined terms unique to the *Harry Potter* franchise, such as "Hogwarts" or "Gryffindor." *See id.* ¶ 39; *see also Warner Bros. Entm't v. Global Asylum, Inc.*, 2012 WL 6951315, at *5 (C.D. Cal. Dec. 10, 2012) (finding "Hobbit" to be a "wholly made-up word with no discernible meaning," and thus "within the category of marks receiving maximum trademark protection"), *aff'd mem.*, 544 F. App'x 683 (9th Cir. 2013); *see also*

WARNER BROS.' OPPOSITION TO RANDOM TUESDAY'S MOTION TO DISMISS

through secondary meaning—*see, e.g.*, Cmplt. ¶¶ 3-4, 29, 39, 52, 58, 61, 99—another fact that Defendants completely ignore, *see* RT Mot. 8-9.[10]

Defendants also disregard big swaths of the Complaint to assert that Warner Bros. has not identified the goods or services its marks are associated with or has not alleged that its goods and services are likely to be confused with the Defendants' goods and services. *See id.*[11] This is false. In fact, the Complaint describes the products and services that are covered by the HP and GG Marks, and further describes the similarities between the products, services, and merchandise offered by Warner Bros. and by Defendants. *E.g.*, Cmplt. ¶¶ 7, 41-51, 59-60, 63-65.[12]

### 3.   Defendants' Trade Dress Arguments, Including Those Based on the *Dastar* Decision, Are Unsupported and Legally Unsound.

Defendants' "trade dress" arguments ignore the allegations in the Complaint and misapprehend the relevant case law. As a threshold matter, Warner Bros. has not alleged a freestanding cause of action for trade dress infringement, so there is

---

*Lucasfilm Ltd. LLC v. Ren Ventures Ltd.*, 2018 WL 2392963, at *1 (N.D. Cal. Apr. 24, 2018) (finding "Sabacc" a coined term and therefore "an inherently distinctive and inherently protectable trademark").

[10] Defendants' argument that some or all of the HP and GG Marks are "generic" also introduces "a question of fact inappropriate to resolve in the context of a motion to dismiss." *Sushi Nozawa, LLC v. HRB Experience*, 2020 WL 1529379, at *3 n.2 (C.D. Cal. Mar. 31, 2020); *accord Solid 21, Inc. v. Breitling USA, Inc.*, 512 F. App'x 685, 686-87 (9th Cir. 2013) (contention that "mark is, in fact, generic is an attempt to introduce evidence to rebut the complaint, which is impermissible").

[11] Similarly, Defendants offer the general observation that ornamental uses are not protected under trademark law, but they do not argue that any particular trademark alleged in the Complaint is merely ornamental. *See* RT Mot. 9.

[12] Defendants also pronounce, with no explanation or support, that Warner Bros. "cannot demand an injunction or damages in connection therewith." RT Mot. 11. If Defendants are somehow arguing that the prayer for relief, in particular for injunctive relief, is somehow deficient, any deficiency is not a basis for a motion to dismiss. *See Sony*, 156 F. Supp. 2d at 1153 (Rule 12(b)(6) motion will not be granted merely because plaintiff requests remedy to which she is not entitled).

no claim to be "dismissed" on Defendants' Motion.  To the extent passing reference to trade dress is made, it is in reference to the overall visual impression made by the specific symbols and other identified trademarks described in the Complaint.  *See, e.g.*, Cmplt. ¶ 58.[13]  Contrary to Defendants' suggestion, Warner Bros. is not seeking to protect the entire corpus of the *Harry Potter* films or the *Gilmore Girls* television series as "trade dress."  The Court therefore should reject this straw man argument and decline the invitation to issue an advisory opinion on a hypothetical situation not presented here.[14]

Defendants further suggest that Warner Bros. should not be allowed to plead *any* trademark claims "that are based in the films or series episodes."  RT Mot. 11. Defendants attempt to ground this sweeping contention in *Dastar Corp. v. Fox Broadcasting Co.*, 539 U.S. 23 (2003), but their argument is flatly contradicted by well-established case law and premised on a gross misreading of *Dastar*.

In *Dastar*, the Supreme Court considered a claim for "reverse passing off" under Section 43(a) of the Lanham Act, brought by Fox against a company that sold a documentary video series about World War II that copied and repackaged a

---

[13] Warner Bros. has also fairly put Defendants on notice of its claims by providing side-by-side images delineating precisely what uses by Defendants it contends are infringing.  *E.g.*, Cmplt. ¶¶ 66-67, 69-71, 74-75, 78-79, 86, 88-89.  In *Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230 (C.D. Cal. 2014), cited by Defendants, the court held that the plaintiff had adequately pled trade dress infringement by attaching "a collection of side-by-side photographs" to its complaint.  *Id.* at 1236, 1239; *see also Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, 923 F. Supp. 2d 1245, 1258 (S.D. Cal. 2013) (denying summary judgment in part because plaintiffs provided photographic evidence of trade dress infringement).

In addition, a "court must test the legal merits of a plaintiff's alleged trade dress at summary judgment or trial when the parties provide with all relevant, admissible evidence—not at the pleading stage when the court has little more than the plaintiff's allegations and the defendant's summary denial of them."  *Lepton Labs*, 55 F. Supp. 3d at 1240.

[14] Defendants raise another unsupported statute of limitations argument in this section of their Motion, which is addressed by Warner Bros. in Section II.D of the Biggs Opposition.  *See* Biggs Opp'n 16-21.

WARNER BROS.' OPPOSITION TO RANDOM TUESDAY'S MOTION TO DISMISS

television series by Fox that had fallen into the public domain for copyright

purposes.  *Id.* at 26-27.[15]  Reasoning that Fox was, in effect, seeking recognition of

a cause of action for "plagiarism" of a public domain work, the Court declined to

construe the Lanham Act in a way that would prevent copying of the content of the

Fox series after it fell out of copyright.  *See id.* at 36; *see also id.* at 33-34

(explaining that the Lanham Act should not be construed to upset the "carefully

crafted bargain" of patent and copyright law, whereby "once the patent or

copyright monopoly has expired, the public may use the invention or work at will

and without attribution").

> *Dastar* did *not* hold—as Defendants mistakenly suggest—that the owner of
a copyrighted entertainment franchise can never assert trademark rights with
respect to elements that appear in that franchise or assert infringement claims in
situations, like the present one, where a defendant misappropriates numerous
elements from the franchise to create the misleading impression that it is sponsored
by or affiliated with that franchise or its owner.

> To the contrary, it is well settled—by decisions before and after *Dastar*—
that the owner of an entertainment franchise may acquire and assert trademark
rights with respect to elements of that property, whether or not it obtains trademark
registrations for those elements.  In 2018, for example, the Fifth Circuit held that
Viacom had properly asserted common law trademark rights in the fictional
"Krusty Krab" restaurant featured in the *SpongeBob SquarePants* animated
television series and films, in a lawsuit against the owner of a chain of seafood
restaurants called "The Krusty Krab."  *Viacom Int'l v. IJR Capital Investments
LLC*, 891 F.3d 178 (5th Cir. 2018).  Citing decisions from the Second and Seventh
Circuits that "have unequivocally extended [trademark] protection to fictional

---

[15] Fox did not allege that Dastar had branded or advertised its video series in a way
that falsely suggested it was sponsored or endorsed by Fox.  *Id.* at 27 (noting that
Dastar's advertising, and the videos themselves, "makes no reference to the [Fox]
television series").

elements of entertainment franchises," the Fifth Circuit affirmed the district court's grant of summary judgment in favor of Viacom. *Id.* at 185-87.

In *Warner Bros. v. Gay Toys*, relied on by the *Viacom* court, the Second Circuit likewise recognized that trademark protection may extend to "the specific ingredients of a successful TV show." *Gay Toys*, 658 F.2d at 78. There, the court reversed the denial of a preliminary injunction against the sale of toy replicas of the fictional "General Lee" automobile featured in the television series *The Dukes of Hazzard*, in part because that element of the series was one "which the public directly associate[d] with [Warner Brothers] or its product." *Id.*[16]

Numerous other decisions further repudiate Defendants' position here. *See, e.g.*, *Conan Properties, Inc. v. Conans Pizza*, 752 F.2d 145, 147 (5th Cir. 1985) (upholding claim against restaurant for infringing the fictional character Conan the Barbarian, where "[t]he restaurant's menus, signs, promotional material, specialty items, and general decor featured a barbarian-like man who closely resembled" the Conan character); *DC Comics v. Kryptonite Corp.*, 336 F. Supp. 2d 324, 332-33 (S.D.N.Y. 2004) (fictional element "Kryptonite" from Superman comics protected under trademark law); *DC Comics, Inc. v. Filmation Assocs.*, 486 F. Supp. 1273, 1277 (S.D.N.Y. 1980) (same); *DC Comics, Inc. v. Powers*, 465 F. Supp. 843 (S.D.N.Y. 1978) (upholding common law trademark rights in the fictional "Daily Planet" newspaper); *J.A.R. Sales*, 1982 WL 1279, at *3-6 (enjoining unlicensed sale of dolls that infringed plaintiff's trademark in the "physical appearance of the character 'E.T.', and its protectible subject matter").

Recently, in *Lucasfilm Ltd. v. Ren Ventures*, *supra*, the court enjoined the defendant's unauthorized use on merchandise of the term "Sabacc" from the *Star Wars* fictional universe, holding that the close association of the fictional card

---

[16] Subsequently, the Seventh Circuit also affirmed an injunction barring the junior user from making and selling a toy model of the "General Lee" car. *See Processed Plastics Co. v. Warner Commc'ns, Inc.*, 675 F.2d 852, 856-59 (7th Cir. 1982).

WARNER BROS.' OPPOSITION TO RANDOM TUESDAY'S MOTION TO DISMISS

game with the franchise—it was the game by which Han Solo acquired his famous *Millennium Falcon* spaceship—warranted protection under the Lanham Act. *See Lucasfilm*, 2018 WL 2392963, at *3-5. Rejecting the same argument suggested by Defendants here, the court noted that "courts have long held that fictional elements of expressive works can function as trademarks when those elements symbolize the plaintiff or its product to the consuming public." *Id.* at *3.

In support of their misreading of *Dastar*, Defendants cite *RDF Media Ltd. v. Fox Broadcasting Co.*, 372 F. Supp. 2d 556 (C.D. Cal. 2005), but that decision is inapposite. *RDF* did not hold that *Dastar* precluded the owner of a copyrighted work from *ever* asserting a viable trademark or trade dress claim based on elements of the work. On the contrary, it cited the MCCARTHY ON TRADEMARKS treatise for the proposition that "trademark and copyright protection may coexist." *Id.* at 564. The *RDF* court's decision turned on the extraordinarily broad allegations in the complaint, and the court dismissed the claim in question because it provided no description of the plaintiff's trade dress at all, beyond defining it as "the total image and appearance" of the television show or, in other words, the "entire corpus" of the show. *Id.* at 563. As noted above, Warner Bros. is not seeking to protect the entire corpus of the *Harry Potter* films or the *Gilmore Girls* series as trade dress.[17]

Notably, Defendants' reading of *Dastar* was emphatically rejected in *Warner Bros. Entertainment Inc. v. X One X Productions*, 840 F.3d 971 (8th Cir. 2016). In that case, Warner Bros. brought suit against sellers of movie memorabilia and collectibles, asserting "both registered and common trademarks

---

[17] Defendants' reference to *Comedy III Productions, Inc. v. New Line Cinema*, 200 F.3d 593 (9th Cir. 2000), is similarly unhelpful. RT Mot. 11. That case involved a Lanham Act claim based on the showing of a clip from a public domain film of the Three Stooges during a scene in the defendants' motion picture *The Long Goodbye*. *Id.* at 594. There were no allegations that the defendant had engaged in any advertising or merchandise sales that drew any connection between the defendant's film and the Three Stooges. The present case, by contrast, does not involve any attempt by Warner Bros. to assert rights in a public domain work.

in the images, characters, words, names, phrases, and symbols related to" the motion pictures *The Wizard of Oz* and *Gone with the Wind*, as well as a number of *Tom and Jerry* cartoons. *Id.* at 975. The defendants argued that *Dastar* barred the trademark claims. In rejecting this argument and affirming a permanent injunction, the Eighth Circuit squarely held that "Warner's asserted trademarks in the characters from the films and cartoons do not run afoul of *Dastar*." *Id.* at 980.

The *X One X* court further explained that "[i]mages of the film actors in character and signature phrases from the films are not communications, concepts, or ideas that the consumer goods embody as *Dastar* defines these terms." *Id.* That was because the marketed products "employ[ed] iconic film characters' pictures to associate the products with Warner's films, not to copy the film itself." *Id.* ("Accordingly, *these are trademark claims, not disguised copyright claims, and* Dastar *does not bar them*.") (emphasis added).[18]

## C.  **Warner Bros.' Federal and State Dilution Claims Are Sufficiently Pled.**

Defendants offer a number of arguments as to why the federal dilution claim (under 15 U.S.C. § 1125(c)) and the California dilution claim (under California Business & Professions Code § 14247[19]) are inadequate. Each argument fails.

First, Defendants dispute Warner Bros.' allegations of fame. In circular fashion, Defendants state that Warner Bros. has identified the HP and GG Marks as famous; then Defendants speculate that *not all* of the HP and GG Marks are actually famous; and on that speculative basis, Defendants announce that Warner Bros. has not sufficiently pled that *any* of its marks are famous. *See* RT Mot. 11-

---

[18] *See also Nirvana, LLC v. Mark Jacobs Int'l, LLC*, 2019 WL 7817082, at *15 (C.D. Cal. Nov. 8, 2019) (rejecting *Dastar* "preemption" argument and observing that "Congress created two separate statutory schemes to govern copyrights and trademarks; in order to effectuate the purpose of both statutes, damages may be awarded under both") (citation and quotation omitted).

[19] In regard to the Complaint's Section 17247 typographical error, no amendment is necessary. Warner Bros. will include the proper statutory citation in discovery and in any future motion practice, pretrial conference order, or judgment.

12, 18-19.  But Defendants again misconstrue ordinary pleading standards.  At this early stage, Warner Bros. need only "plead the elements of a dilution claim sufficient to set forth a claim for relief."  *In-N-Out Burgers v. Smashburger IP Holder LLC*, 2017 WL 10402610, at *3 (C.D. Cal. Dec. 21, 2017).  It need not *prove* that its marks are famous, rising to the level of a brand like Budweiser.  *Id.*

Defendants may dispute Warner Bros.' evidentiary support for the fame of its marks and its brand generally, but such arguments "take aim at the *truth*" of Warner Bros.' factual allegations.  *Id.*  The relevant issue at the pleadings stage is whether Warner Bros. made factual allegations in its Complaint, not whether the factual allegations are valid.  *See id.* at *3, *5 ("arguments [that] take aim at the *truth* of In-N-Out's factual allegations" and "arguments about the validity of the alleged facts" are "more appropriate for summary judgment than for a motion to dismiss"); *see also Sugar Factory, LLC v. Glossy Pops, LLC*, 2019 WL 2994202, at *7 (C.D. Cal. July 8, 2019) ("detailed factual allegations *proving* fame, including 'approximate figures,'" are not required at pleading stage).

Undeterred by Rule 8, Defendants make sweeping and unsupported claims that the HP and GG Marks include marks that are merely "descriptive and/or have common English meanings," and therefore, Warner Bros. cannot bring *any* dilution claim as to *any* mark whatsoever.  RT Mot. 12.  Defendants then proceed to liken the HP and GG Marks to quotidian examples of insufficiently famous marks like the number "08" and the word "eye."  *Id.* at 12 (referencing *Ketab Corp. v. Mesriani & Assocs.*, 2015 WL 5050512, at *4 (C.D. Cal. Aug. 26, 2015), *aff'd in part, vacated in part*, 734 F. App'x 401 (9th Cir. 2018), and *Metro Pub., Ltd. v. San Jose Mercury News, Inc.*, 861 F. Supp. 870, 880-81 (N.D. Cal. 1994).  This comparison is nonsensical.  The HP and GG Marks—whose popular fictional universes have inspired two motion pictures franchises, theme park attractions, an array of themed events, and a seven-season television series—include such famous and immediately recognizable marks as HARRY POTTER, HOGWARTS, and

1   GRYFFINDOR.  *See* Cmplt. ¶¶ 28-38, 39, 56-58.  They are in no way comparable

2   to the number "08" or the word "eye."[20]

3       Second, Defendants again ignore the plain text of the Complaint to argue

4   that Warner Bros. has not alleged that Defendants' use began after the HP and GG

5   Marks became famous.  RT Mot. 12.  In actuality, the Complaint alleges, *inter*

6   *alia*, that "[b]y virtue of the enormous popularity of the HP Marks and GG Marks,

7   and the massive advertising and promotion of the *Harry Potter* and *Gilmore Girls*

8   entertainment franchises, these marks are famous among consumers and *became*

9   *famous long before their use by Defendants*."  Cmplt. ¶ 107 (emphasis added).

10      Third, Defendants erroneously argue that "fundamental dissimilarit[ies]"

11  between the HP and GG Marks and Defendants' use preclude a dilution claim, as

12  "[d]ilution  requires a plaintiff to 'demonstrate that the marks are 'identical' or

13  'nearly identical' ....'"  RT Mot. 13.  Since the enactment of the Trademark Dilution

14  Revision Act of 2006, however, plaintiffs are no longer required to establish that

15  the junior mark is "identical, nearly identical or substantially similar to the senior

16  mark ...."  *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d

17  1158, 1172 (9th Cir. 2011).  Thus this argument, too, fails.

18      Finally, Defendants' claim that Warner Bros. has not and "cannot" state how

19  Defendants' diluting use has harmed the HP and GG Marks, RT Mot. 13, is both

20  legally and factually unsupported.  Warner Bros. need not allege or prove actual

21  economic harm to state a claim, as the statute requires proof only of a "likelihood

22  of dilution," *Levi Strauss*, 633 F.3d at 1169, 1173, which may be established

23  "regardless ... of actual economic injury," 15 U.S.C. § 1125(c)(1).  Moreover,

24  "likelihood of dilution" is "a factual inquiry generally not appropriate for decision

25  on summary judgment," let alone on a motion to dismiss.  *Levi Strauss*, 633 F.3d at

26

27  _____

    [20] And even if certain of the HP or GG Marks are ultimately found to be
28  insufficiently famous, Defendants fail to explain how such hypothetical piecemeal
    exclusion could defeat Warner Bros.' *entire* dilution claim, as to *all* of its marks.

WARNER BROS.' OPPOSITION TO RANDOM TUESDAY'S MOTION TO DISMISS

1173.  In any event, the Complaint abundantly alleges the harm Defendants' conduct has caused.  *See, e.g.*, Cmplt. ¶¶ 7, 63-91; *see also id.* ¶¶ 109, 148.[21]

**D.** **Warner Bros.' False Advertising Claims Are Sufficiently Pled.**

In both their Motions, Defendants present arguments against Warner Bros.' false advertising claims.  Warner Bros. has addressed those arguments in Section II.C of its Biggs Opposition, and incorporates those opposing arguments by reference herein.  Biggs Opp'n 9-16.

**E.** **Warner Bros.' Copyright Infringement Claim Is Sufficiently Pled.**

Defendants' copyright arguments are similarly contradictory and contrary to well-established law.  Warner Bros. identifies by title and registration number 15 specific works in which it owns copyrights and which form the basis of Warner Bros.' claim for copyright infringement, Cmplt. ¶¶ 53-54, 62, as well as numerous specific instances of Defendants' unauthorized copying, *e.g.*, *id.* ¶¶ 69, 84, 70, 78.

Defendants concede that Warner Bros. has "set forth a claim that it holds copyrights in various episodes of the television program *Gilmore Girls*, as well as Style Guides related thereto, and to the eight *Harry Potter* films and five Style Guides related thereto."  RT Mot. 16.  However, in an echo of the "among others" cavil discussed above regarding the trademark allegations, Defendants then argue that the entire copyright claim should be dismissed because the claim includes a reference to "press kits, photographs, and other promotional materials" without listing specific registration numbers for those works.  RT Mot. 16-17.

Defendants cite the Supreme Court's recent decision in *Fourth Estate Public Benefit Corp. v. Wall-Street.Com*, 139 S. Ct. 881 (2019), which does nothing to support to their argument.  In *Fourth Estate*, the Supreme Court resolved a circuit split by holding that a copyright claimant may not commence an action for

---

[21] Defendants raise yet another unsupported statute of limitations argument in this section of their Motion, which is addressed by Warner Bros. in Section II.D of the Biggs Opposition.  *See* Biggs Opp'n 16-21.

infringement until the Register of Copyrights has either registered the copyright or refused registration. *See id.* at 887, 891, 892. Here, the Complaint plainly states that Warner Bros. "is the owner of federal copyright registrations" for the motion pictures, television series, and Style Guides, *as well as* the "press kits, photographs, and other promotional materials," "which registrations are valid and subsisting." Cmplt. ¶ 119. This paragraph pleads all that *Fourth Estate* requires.

*Fourth Estate* does not purport to modify the pleading standard of Rule 8. Nor does it stand for the proposition that where, as here, the plaintiff has expressly alleged her ownership of valid copyright registrations, the copyright claim must be dismissed merely because the plaintiff's reference to unspecified works does not provide detailed registration information. It is quite common, in fact, for courts to entertain copyright infringement lawsuits where the complaint provides only a representative sample of the copyrighted works that ultimately will be at issue. *See, e.g.*, *Amazon Content Servs., LLC v. Set Broadcast, LLC*, 2019 WL 7856766, at *4 (C.D. Cal. Nov. 25, 2019); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120-21 (C.D. Cal. 2001) ("Copyright claims need not be pled with particularity.… Requiring a statement of each and every example [of infringement] would defeat the regime established by Rule 8."); *Hybrid Promotions, LLC v. Zaslavsky*, 2016 WL 10988656, at *10 (C.D. Cal. Oct. 5, 2016) (failure to identify copyright registrations by number is "not fatal at the FRCP 12(b)(6) stage," as this identification is merely "helpful").

Defendants further quibble about the level of evidentiary detail in the Complaint when they argue—without citation to any authority—that the copyright claim should be dismissed because the Complaint does not specify the date of publication of each copyrighted work or attach copies of the copyright registration certificates. *See* RT Mot. 17. But there is no rule requiring such information to be included in a complaint. *See, e.g.*, *Malibu Textiles*, 922 F.3d at 952 (plaintiff not required to attach registration materials or deposit copy to complaint); *Nintendo of*

*Am., Inc. v. Storman*, 2020 WL 2463374, at *2 (C.D. Cal. Jan. 15, 2020) (complaint adequately alleged ownership by alleging plaintiff held registered copyrights for subject works and identifying registration numbers and dates).[22]

Defendants further contend that the copyright claim should be dismissed because Warner Bros. has used the phrase "among others" when describing the visual elements found in the *Harry Potter* and *Gilmore Girls* copyrighted works. *See* Cmplt. ¶ 119. Defendants contend that Warner Bros.' "inclusion of the phrase 'among others'" as a "catch-all[]," renders the claim "impermissibly overbroad" and "does not put Defendant on notice as to what those 'others' are" and "does not adequately identify what aspects of the works for which it pled registrations have been infringed ...." RT Mot. 17. Defendants artificially treat this one phrase in the abstract, as if it were not preceded by 91 paragraphs of detailed factual allegations and numerous side-by-side comparisons—even though the copyright claim expressly incorporates those paragraphs and refers to visual elements "as alleged herein." Cmplt. ¶¶ 118-19.

Moreover, it is well established that, so long as the essential elements are alleged, a claim for copyright infringement will be sufficiently pled if it provides representative examples of what has been copied, rather than an exhaustive list. *See*, *supra*, at 20; *see also Paramount Pictures Corp. v. Axanar Prods., Inc.*, 2016 WL 2967959, at *3 (C.D. Cal. May 9, 2016) ("[c]ourts do not require copyright claims to be pled with such particularity"). Indeed, one of the cases relied upon by Defendants expressly held that a complaint "asserting copyright ownership of the

---

[22] A Rule 12 motion is not a substitute for discovery. While certificates and additional related detail may certainly become relevant at a later date, discovery is the appropriate vehicle to seek such information. *See, e.g., Hybrid Promotions*, 2016 WL 10988656, at *11 ("Hybrid's questions are better answered through the discovery process, and the same arguments may be raised again in a motion for summary judgment, if supported by proper evidence, at an appropriate time."); *see also id.* at *8-9 (a "mere allegation of ownership is sufficient to defeat a motion to dismiss") (collecting cases).

1   Warcraft Works[,] the characters therein," and "*a variety of related products and*
2   *merchandise*" sufficiently identified the works at issue and "plausibly alleged
3   'ownership of a valid copyright.'" *Blizzard Entm't, Inc. v. Lilith Games*
4   *(Shanghai) Co.*, 149 F. Supp. 3d 1167, 1172 (N.D. Cal. 2015) (emphasis added).[23]

5       *Paramount Pictures*—a case involving an infringing *Star Trek* fan movie—
6   is particularly instructive.  There, too, the defendants argued that the plaintiffs had
7   failed to "plead [] with sufficient specificity, thus not providing [] requisite notice
8   to determine the potentially infringing works ... because the FAC does not identify
9   each episode, film, and elements that were allegedly infringed."  *Paramount*
10  *Pictures*, 2016 WL 2967959, at *3.  The court disagreed, noting the complaint had
11  "alleged copyright infringement as to the Star Trek franchise as a whole," and went
12  "to great lengths to compare and contrast allegedly infringing elements of the Star
13  Trek franchise through photographs and vivid descriptions."  *Id.*

14      Here, Warner Bros. has pointed to specific representative copyright
15  registrations from the *Harry Potter* and *Gilmore Girls* franchises as a whole,
16  including the Platform 9 ¾ emblem and the Deathly Hallows Triangle Design, and
17  provided images, descriptions, and even side-by-side comparisons with
18  Defendants' infringing works.  *See, e.g.*, Cmplt. ¶¶ 53-54, 62, 69, 70, 78.  As in
19  *Paramount*, Defendants are fully on notice of the nature of the infringement claim.

20      Defendants similarly ignore the detailed allegations in the Complaint when
21  they argue in the abstract that Warner Bros. cannot assert a claim based on facts,
22  ideas, stock elements, or non-original material.  RT Mot. 17-18.  This is not a case
23  about the substantial similarity of two literary works.  Warner Bros. has alleged
24

25  _____
    [23] Like Defendants here, the *Blizzard* defendant argued that the plaintiffs had
26  "fail[ed] to identify the aspects of Plaintiffs' works that 'Heroes Charge'
    infringes."  *Id.* at 1175.  In rejecting this argument, the court stated that the
27  plaintiffs were not required "to specify each and every instance of infringement at
    the pleadings stage.  To avoid unwieldiness, courts have approved a complaint that
28  simply alleges representative acts of infringement, rather than a comprehensive
    listing."  *Id.* (citation and quotation omitted).

that Defendants engaged in literal copying of protected photographs, emblems, and other images, and the Complaint repeatedly illustrates those incidents of illicit copying by including copies of the images at issue.  *See* Cmplt ¶¶ 66-91.

These images also make clear that Warner Bros. is not trying to protect a generic idea of a three-headed dog or the number nine and three-quarters in the abstract, as Defendants disingenuously imply.  To take those examples, Warner Bros. instead seeks to protect a very specific three-headed dog, named Fluffy, that was visually depicted in a specific way in a Style Guide, against the Defendants' literal copying of that same visual depiction of Fluffy, standing in the same position, viewed from the same angle.  Cmplt. ¶ 78.  Similarly, while the number nine and three-quarters alone may be unprotectable, Warner Bros. is not purporting to police the field of mathematics.  Instead, it seeks to protect its own very specific, stylized emblem, used in the *Harry Potter* motion pictures and featured in its Style Guide, to refer to the magical train station at Platform 9 ¾, which consists of a circular emblem, with a distinctive font and red and black color scheme—which Defendants have replicated in their depiction.  *Id.* ¶ 69.

The express, detailed allegations in the Complaint, along with its numerous visual representations, also belie Defendants' straw man argument that Warner Bros. is somehow seeking to protect "every element of its copyrighted work," including "uncopyrightable subject matter."  RT Mot. 18 (discussing the *Blizzard* decision).  Warner Bros. is making no such claim.  Rather, Warner Bros. has identified precisely which elements of which works are protected by copyright, provided images and descriptions, and explained why the infringing works are substantially similar.  *See, e.g.*, Cmplt. ¶¶ 53-55, 62, 69, 78.  In short, Warner Bros.' copyright claim is well pled, and the Motion should be denied.

## F.   Defendants' Alternative Motions Under Rule 12 Should Be Denied.

Motions to strike—particularly where the moving party is not prejudiced by the language in question—are disfavored.  *See Neilson v. Union Bank of Cal., N.A.*,

290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003).  Here, it is not clear what, if anything, Defendants seek to strike, but to the extent they seek to strike anything, this request should be denied.  Defendants have not provided any legal basis to strike any allegations; they certainly have not demonstrated any actual prejudice, material or otherwise, as a result of any language in the Complaint.

Because Defendants cannot plausibly argue that they "literally cannot frame a responsive pleading," their request for a more definite statement also should be denied.  *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996).  A motion for a more definite statement, after all, "attacks the *unintelligibility* of the complaint, not simply the mere lack of detail."  *Beery v. Hitachi Home Elecs. (Am.), Inc.*, 157 F.R.D. 477, 480 (C.D. Cal. 1993) (emphasis added).  To the extent Defendants desire further detail, it is "obtainable through discovery," and the request therefore should be denied.  *Id.* at 480.

## IV.   CONCLUSION

For all the foregoing reasons, Defendants' Motion should be denied in its entirety.  To the extent Defendants alternatively move to strike and for a more definite statement, these motions should also be denied.  If, however, the Court finds the Complaint deficient in any way, Warner Bros. respectfully requests leave to amend to cure any such deficiency.

Dated:  July 3, 2020              JENNER & BLOCK LLP


                                 */s/ Andrew J. Thomas*
                                 Andrew J. Thomas


                                 Attorneys for Plaintiff
                                 WARNER BROS. ENTERTAINMENT INC.