JENNER & BLOCK LLP
Andrew J. Thomas (SBN 159533)
ajthomas@jenner.com
Alice S. Kim (SBN 317479)
akim@jenner.com
Camila Connolly (SBN 323996)
cconnolly@jenner.com
633 West Fifth Street, Suite 3600
Los Angeles, CA 90071
Telephone:  (213) 239-5100
Facsimile:  (213) 239-5199

Attorneys for Plaintiff
WARNER BROS. ENTERTAINMENT INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARNER BROS. ENTERTAINMENT INC., a Delaware corporation, <br><br>         Plaintiff, <br><br>   v. <br><br> RANDOM TUESDAY, INC., a Connecticut corporation, dba HOGWARTS RUNNING CLUB, CHILTON RUNNING CLUB, and POTTERHEAD RUNNING CLUB; BRIAN BIGGS, an individual; and DAWN BIGGS, an individual, <br><br>         Defendants. | Case No. 2:20-cv-02416-JAK-PLA <br><br> The Honorable John A. Kronstadt <br><br> **PLAINTIFF WARNER BROS. ENTERTAINMENT INC.'S OPPOSITION TO DEFENDANTS BRIAN AND DAWN BIGGS' MOTION TO DISMISS COMPLAINT** <br><br> [Opposition to Random Tuesday's Motion to Dismiss Complaint; Request for Judicial Notice; and Declaration of Alice S. Kim with Exhibits A-B, filed concurrently] <br><br> Hearing Date:   October 26, 2020 <br> Hearing Time:   8:30 a.m. <br> Courtroom:     10B <br><br> Action Filed:  March 13, 2020 |

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................. 1

II.     ARGUMENT ...................................................................................... 3

        A.    Applicable Pleading Standards. .................................................... 3

        B.    The Complaint Adequately Pleads that Brian and Dawn
              Biggs Are Personally Liable for the Alleged
              Infringement and Other Misconduct. ........................................... 4

        C.    Warner Bros. Has Adequately Pled Its Unfair
              Competition and False Advertising Claims under
              Federal and California Law. ......................................................... 9

              1.    The Complaint Alleges a Viable California UCL
                    Claim. .......................................................................... 10

              2.    Warner Bros. Has Adequately Alleged False
                    Advertising. .................................................................. 11

              3.    Warner Bros. Is Not Required to Plead Its Own
                    Reliance. ...................................................................... 13

        D.    Warner Bros. Has Adequately Pled Its Trademark and
              Copyright Claims Against Brian and Dawn Biggs, and
              the Complaint Does Not Establish that Any Claim Is
              Barred by the Statute of Limitations. ......................................... 16

III.    CONCLUSION .................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amstead v. City of Los Angeles*,
   66 F. Supp. 3d 1254 (C.D. Cal. 2014)................................................................4

*Apple Hill Growers v. El Dorado Orchards*,
   2019 WL 5827365 (E.D. Cal. Nov. 7, 2019) .....................................................6

*Arcona, Inc. v. Farmacy Beauty, LLC*,
   2018 WL 1441155 (C.D. Cal. Mar. 22, 2018) ...................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................3

*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles*,
   648 F.3d 986 (9th Cir. 2011) ..............................................................................3

*Beery v. Hitachi Home Electronics (America), Inc.*,
   157 F.R.D. 477 (C.D. Cal. 1993) ........................................................................4

*Bigfoot Ventures, LLC v. Compania Mexicana de Aviacion, S.A. de C.V.*,
   2010 WL 2985832 (S.D. Cal. July 23, 2010).....................................................18

*Bobbleheads.com, LLC v. Wright Bros., Inc.*,
   259 F. Supp. 3d 1087 (S.D. Cal. 2017) ..................................................11, 12, 13

*Brady v. Bayer Corp.*,
   26 Cal. App. 5th 1156 (2018).............................................................................12

*Bureerong v. Uvawas*,
   922 F. Supp. 1450 (C.D. Cal. 1996)....................................................................3

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
   20 Cal. 4th 163 (1999).......................................................................................10

*Chloe SAS v. Sawabeth Information Services Co.*,
   2014 WL 4402218 (C.D. Cal. Sept. 5, 2014)...............................................18, 19

*Clorox Co. v. Reckitt Benckiser Group PLC*,
   398 F. Supp. 3d 623 (N.D. Cal. 2019) ...............................................................13

*Coastal Abstract Services, Inc. v. First American Title Insurance Co.*,
  173 F.3d 725 (9th Cir. 1999) ............................................................... 4

*Collins v. eMachines, Inc.*,
  202 Cal. App. 4th 249 (2011) ............................................................. 15

*Conservation Force v. Salazar*,
  646 F.3d 1240 (9th Cir. 2011) ......................................................... 3, 9

*Conte v. Jakks Pac, Inc.*,
  2012 WL 6115632 (E.D. Cal. Dec. 10, 2012) .................................... 11

*Daimler AG v. A-Z Wheels LLC*,
  2017 WL 9854427 (S.D. Cal. Nov. 27, 2017) ..................................... 8

*Day v. AT&T Corp.*,
  63 Cal. App. 4th 325 (1988) ............................................................... 15

*Deckers Outdoor Corp. v. Bright Trading Corp.*,
  2014 WL 12564124 (C.D. Cal. Apr. 28, 2014) ................................. 5, 6

*Digby Adler Group LLC v. Image Rent a Car, Inc.*,
  79 F. Supp. 3d 1095 (N.D. Cal. 2015) ............................................. 4, 7

*EcoDisc Technology AG v. DVD Format/Logo Licensing Corp.*,
  711 F. Supp. 2d 1074 (C.D. Cal. 2010) ......................................... 11, 12

*EEOC v. Alia Corp.*,
  842 F. Supp. 2d 1243 (E.D. Cal. 2012) ............................................... 4

*Eliminator Custom Boats v. Am. Marine Holdings, Inc.*,
  2007 WL 4978243 (C.D. Cal. Nov. 5, 2007) ..................................... 17

*Foreverendeavor Music, Inc. v. S.M.B., Inc.*,
  701 F. Supp. 791 (W.D. Wash. 1988) ................................................. 5

*Herman Miller, Inc. v. Blumenthal Distributing, Inc.*,
  2019 WL 1416472 (C.D. Cal. Mar. 4, 2019) ..................................... 17

*In re Tobacco Cases II*,
  46 Cal. 4th 298 (2009) ................................................................... 14, 15

*Jablon v. Dean Witter & Co.*,
  614 F.2d 677 (9th Cir. 1980) ....................................................... 16, 20

WARNER BROS.' OPPOSITION TO BRIAN AND DAWN BIGGS' MOTION TO DISMISS

*Kwikset Corp. v. Superior Court*,
　　51 Cal. 4th 310 (2011).................................................................................. 11, 15

*Luxul Technology Inc. v. Nectarlux, LLC*,
　　78 F. Supp. 3d 1156 (N.D. Cal. 2015) ......................................................... 15

*Miller v. Glenn Miller Productions, Inc.*,
　　454 F.3d 975 (9th Cir. 2006) ........................................................................ 18

*Move Press, LLC v. Peloton Interactive, Inc.*,
　　2019 WL 4570018 (C.D. Cal. Sept. 5, 2019) .............................................. 17

*Murphy v. Hartford Accident & Indemnity Co.*,
　　177 Cal. App. 2d 539 (1960) ........................................................................ 17

*Neilson v. Union Bank of California, N.A.*,
　　290 F. Supp. 2d 1101 (C.D. Cal. 2003) ......................................................... 4

*Obesity Research Institute, LLC v. Fiber Research International, LLC*,
　　165 F. Supp. 3d 937 (S.D. Cal. 2016) .......................................................... 10

*One Industries, LLC v. Jim O'Neal Distributing, Inc.*,
　　578 F.3d 1154 (9th Cir. 2009) ........................................................................ 4

*Oracle America, Inc. v. TERiX Computer Co., Inc.*,
　　2014 WL 31344 (N.D. Cal. Jan. 3, 2014) .................................................... 12

*Pak's Trading Europe B.V. v. Target*,
　　2018 WL 8333362 (C.D. Cal. July 5, 2018) ............................................... 16

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
　　572 U.S. 663 (2014) ...................................................................................... 19

*Plascencia v. Lending 1st Mortgage*,
　　583 F. Supp. 2d 1090 (N.D. Cal. 2008) ....................................................... 10

*PMC, Inc. v. Kadisha*,
　　78 Cal. App. 4th 1368 (2000) ......................................................................... 8

*QS Wholesale, Inc. v. Rox Volleyball, Inc.*,
　　2015 WL 4484219 (C.D. Cal. July 19, 2015) ............................................. 19

*Rolex Watch U.S.A., Inc. v. Agarwal*,
　　2012 WL 12886444 (C.D. Cal. Dec. 17, 2012) .......................................... 12

WARNER BROS.' OPPOSITION TO BRIAN AND DAWN BIGGS' MOTION TO DISMISS

*Rubio v. Capital One Bank*,
   613 F.3d 1195 (9th Cir. 2010) .......................................................................... 10

*Sagan v. Apple Computer, Inc.*,
   874 F. Supp. 1072 (C.D. Cal. 1994) ................................................................. 3

*Sonoma Foods v. Sonoma Cheese Factory*,
   2007 U.S. Dist. LEXIS 96733 (N.D. Cal. Apr. 3, 2007) ........................... 18, 19

*SPS Techs., LLC v. Briles Aerospace, Inc.*,
   2019 WL 6841992 (C.D. Cal. Oct. 30, 2019) ................................................. 13

*V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas LLC*,
   2016 WL 1268008 (E.D. Cal. Mar. 31, 2016) ................................................. 17

*Veera v. Banana Republic, LLC*,
   6 Cal. App. 5th 907 (2016) ............................................................................. 12

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .................................................................. 10, 12

*VP Racing Fuels, Inc. v. General Petroleum Corp.*,
   2010 WL 1611398 (E.D. Cal. Apr. 20, 2010) ........................................... 14, 15

*Wolf v. Travolta*,
   167 F. Supp. 3d 1077 (C.D. Cal. 2016) .......................................................... 19

**STATUTES**

15 U.S.C. § 1051, *et seq.* ....................................................................... *passim*

17 U.S.C. § 507 ................................................................................................ 19

California Business & Professions Code § 17200, *et seq.* ............................ *passim*

California Business & Professions Code § 17500, *et seq.* ............................ *passim*

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 8 .............................................................. 2, 3

Federal Rule of Civil Procedure 9 ............................................. 10, 11, 12, 13

Federal Rule of Civil Procedure 12 ........................................................ *passim*

WARNER BROS.' OPPOSITION TO BRIAN AND DAWN BIGGS' MOTION TO DISMISS

6 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION
    § 31:33 (5th ed. June 2020) ............................................................... 19

Judge Virginia A. Phillips & Judge Karen L. Stevenson, CALIFORNIA PRACTICE
    GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL Ch. 9-D (The Rutter Group,
    updated Apr. 2020) ............................................................................. 16

WARNER BROS.' OPPOSITION TO BRIAN AND DAWN BIGGS' MOTION TO DISMISS

## I.      INTRODUCTION

In defendant Random Tuesday, Inc.'s Motion to Dismiss (the "RT Motion") (ECF No. 22), it concedes that its *Harry Potter* and *Gilmore Girls*-themed business "has manifested [defendants Brian and Dawn Biggs'] love for the *Harry Potter* book and film series, as well as the *Gilmore Girls* series."  Def. Random Tuesday's Mem. in Supp. of Mot. to Dismiss ("RT Mot.") 1, ECF No. 22-1.  Nevertheless, in a separate Rule 12 motion that easily could have been combined with Random Tuesday's motion, Brian and Dawn Biggs argue that the Complaint against them should be dismissed because it fails to adequately allege their participation in their own closely-held company's infringement.  In addition to being legally deficient, Brian and Dawn Biggs' Motion to Dismiss fails to square its position in this Motion with the judicial admission in the RT Motion that the use of Warner Bros.' intellectual property "manifested [their] love" of *Harry Potter* and *Gilmore Girls*, nor do they provide any explanation as to who, other than they, made every decision that led to the infringement that is the subject matter of the Complaint.[1]

In addition, as in the RT Motion, Brian and Dawn Biggs set forth a litany of misdirected pleading critiques, in service of what is, despite references to Rules 12(b) and 12(f) of the Federal Rules of Civil Procedure, at bottom an elaborate motion for a more definite statement, prematurely demanding evidentiary detail more properly sought in the discovery process.  Just as the company they own and run cannot credibly complain that it is not on notice of what plaintiff Warner Bros. is suing about, so, too, is there no basis for Brian and Dawn Biggs to claim that the Complaint fails to apprise them of what they are being sued for, leaving them so at

---

[1] Brian and Dawn Biggs join and reiterate many of the arguments made in the RT Motion.  *See* Defs. Brian and Dawn Biggs' Mem. in Supp. of Mot. to Dismiss ("Biggs Mot.") 3, 7-9, ECF No. 23-1; *see also* RT Mot. 20.  For brevity, Warner Bros. incorporates by reference herein the arguments and relevant factual background set forth in its concurrently-filed Opposition to the RT Motion (the "RT Opposition").

sea that they "cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).

After many months of correspondence and conference calls—as well as an in-person meeting at Warner Bros.—with Brian and Dawn Biggs and their two intellectual property lawyers, in March 2020 Warner Bros. filed a 52-page complaint containing 91 paragraphs of detailed factual allegations.  The Complaint specifically identifies numerous trademarks and copyrights—by name, registration number, and registration date—that have been infringed by the actions of Brian Biggs, Dawn Biggs, and their company Random Tuesday (collectively, "Defendants").  The Complaint describes in detail Warner Bros.' use in commerce of those marks, as well as its extensive efforts to provide immersive themed experiences to fans of the *Harry Potter* and *Gilmore Girls* entertainment franchises—ends that Defendants have embraced in aiming to immerse their running club members in the *Harry Potter* or *Gilmore Girls* fictional universes for commercial gain.

The Complaint also describes in detail the goods and services Defendants offer the public that Warner Bros. contends are infringing, and—in more than 50 instances across 25 numbered paragraphs—the Complaint provides side-by-side comparisons showing the allegedly infringing items and/or direct quotations of Defendants' own statements.  For Brian and Dawn Biggs to assert now that they cannot reasonably determine what they are being accused of and cannot reasonably prepare a responsive pleading is farcical.[2]

---

[2] The Complaint's allegations go far beyond Rule 8's minimum notice pleading requirement and provide more than enough factual detail for Brian and Dawn Biggs to prepare a responsive pleading, as required by Rule 12(e).  Defendants also have offered no basis for striking any of the Complaint's allegations, as required by Rule 12(f).  Thus, to the extent they purport to move in the alternative for a more definite statement and/or move to strike, these requests also should be denied.

WARNER BROS.' OPPOSITION TO BRIAN AND DAWN BIGGS' MOTION TO DISMISS

# II.     ARGUMENT

## A.     Applicable Pleading Standards.

Both Motions filed by Defendants present a tangle of arguments taking issue primarily with the phrasing of Warner Bros.' Complaint allegations—sometimes asking for more evidentiary detail, elsewhere challenging isolated phrases (such as "among others").  The pleading standards applicable to Rule 12 have developed largely to discourage, rather than reward, this sort of exercise.

In considering a motion to dismiss under Rule 12(b)(6), courts must accept as true all of the factual allegations in the complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009).  The critical question is whether, assuming the factual allegations are true, the plaintiff has stated a plausible claim for relief.  *Id.*  In reviewing the allegations, courts must "construe the pleadings in the light most favorable to the nonmoving party" and "draw[] all reasonable inferences in favor of the plaintiff." *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011).  Dismissal is proper only "if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citation and quotation omitted).

It is even more difficult to prevail on a motion for a more definite statement. Under the plain language of the Rule, such a motion should be granted only where the complaint is "so vague or ambiguous that the [moving] party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  "Motions for a more definite statement are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules."  *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994).  Because a motion for a more definite statement "must be considered in light of the liberal pleading standards of Rule 8(a)," it "should not be granted unless the defendant literally cannot frame a responsive pleading."  *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996).  So

long as the complaint is intelligible enough to apprise the defendant of the substance of the claim being asserted, the motion should be denied.  *See EEOC v. Alia Corp.*, 842 F. Supp. 2d 1243, 1250 (E.D. Cal. 2012).  Rule 12 motions are not substitutes for discovery, and if the detail sought in a Rule 12(e) motion is obtainable through discovery, the motion should be denied.  *E.g.*, *id.*; *Beery v. Hitachi Home Electronics (America), Inc.*, 157 F.R.D. 477, 480 (C.D. Cal. 1993).[3]

Rule 12(f) motions to strike are also disfavored, especially where, as here, the moving party is not prejudiced by the language in question.  *See Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003) ("Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic."); *see also Amstead v. City of Los Angeles*, 66 F. Supp. 3d 1254, 1273 (C.D.  Cal. 2014).

## B.   The Complaint Adequately Pleads that Brian and Dawn Biggs Are Personally Liable for the Alleged Infringement and Other Misconduct.

It is black-letter law that a corporate officer cannot "hide behind the corporation where he is an actual participant in the tort."  *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co*., 173 F.3d 725, 734 (9th Cir. 1999) (citation and quotation omitted).  "A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf."  *Digby Adler Grp. LLC v. Image Rent a Car, Inc*., 79 F. Supp. 3d 1095, 1104 (N.D. Cal. 2015) (citation and quotation omitted).  In the intellectual property context, it is "well established that a corporate officer will be liable as a joint tortfeasor with the corporation … where the officer was the dominant influence in

---

[3] Similarly, such motions are not proper vehicles for resolving merits issues: those issues should be left for summary judgment or for trial, after full discovery.  *One Industries, LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1160 (9th Cir. 2009).

the corporation, and determined the policies which resulted in the infringement." *Foreverendeavor Music, Inc. v. S.M.B., Inc.*, 701 F. Supp. 791, 793-94 (W.D. Wash. 1988) (citation and quotation omitted); *see also Deckers Outdoor Corp. v. Bright Trading Corp.*, 2014 WL 12564124, at *2, *4 (C.D. Cal. Apr. 28, 2014) (corporate officers who "are a moving, active conscious force behind the corporation's infringement"—i.e., who "actively participate[] as a moving force in the *decision* to engage in the infringing acts, or otherwise caused the infringement as a whole to occur"—can be personally liable) (citations omitted).

Here, Random Tuesday is a small, closely held, family-run business. It is wholly owned by the married couple who founded it in 2014—husband Brian Biggs and wife Dawn Biggs. Brian Biggs is also the Chief Executive Officer of the company, and Dawn Biggs is the Chief Creative Officer. *See* Complaint ("Cmplt.") ¶¶ 15, 17, 24, ECF No. 1. Together, they run the show. Indeed, they *are* the show.

As alleged in the Complaint, they "direct[] and control[]" every aspect of Random Tuesday's business, including by "knowingly direct[ing] Random Tuesday, Inc. to offer infringing merchandise for sale." *Id.* ¶¶ 15, 17; *see also id.* ¶ 24. They also are the face and voice of the company—speaking for it on Random Tuesday's website and social media platforms, on their own personal social media platforms, in interviews, and at public events, including conventions and "meet-ups" with members and customers, in order to promote Random Tuesday's infringing events and infringing merchandise. *See id.* ¶¶ 16, 18. Brian and Dawn Biggs also spoke for the company when they falsely represented to a consumer that Random Tuesday's running clubs were affiliated with and approved by Warner Bros.[4]

---

[4] In August 2019, a consumer complained to Warner Bros. that "she was induced to contribute substantial sums of money to Defendants' business because she mistakenly believed … 'all their material has been approved by WB.'" Cmplt. ¶ 8. As alleged, "[w]hen the consumer raised concerns to Defendants, Defendants

Defendants disregard these well-pled facts entirely and first claim that Warner Bros. has "utterly failed to allege anything other than conclusory statements" and then claim that the "more specific allegations" that Warner Bros. did allege "are wholly unrelated to participating in any infringement or other unfair competition or only support that the Biggses acted to promote RTI's business generally." Biggs Mot. 3-5. They then rely on factually dissimilar cases in which the corporate defendants were significantly larger companies and the complaints contained no (or nearly no) specific factual allegations regarding the individual defendants at all. *E.g.*, *Deckers*, 2014 WL 12564124, at *1, *2, *4; *Arcona, Inc. v. Farmacy Beauty, LLC*, 2018 WL 1441155, at *1, *11 (C.D. Cal. Mar. 22, 2018).

In *Deckers*, for example, only two allegations were made: (1) the individual defendants were members, officers, directors, and/or managing agents of the corporate defendants, and (2) they were the "'active, moving, conscious forces' behind the alleged patent infringement." *Deckers*, 2014 WL 12564124, at *2. Similarly, the *Arcona* court, which acknowledged that participation "may be a direct action but is also satisfied by the knowing approval or ratification of unlawful acts," found "summary assertions" of direction and authorization of the corporate defendant's infringing conduct insufficient to establish personal liability. *Arcona*, 2018 WL 1441155, at *10-11 (citation and quotation omitted). In *Arcona*, the individual defendants also offered rebutting facts: they explained they had hired a consultant to develop the allegedly infringing product and they had not advised the consultant in either naming the product or developing the subsequent marketing plan. *Id.* at *1.[5] Here, by contrast, Brian and Dawn Biggs have not

reportedly assured her that they had Warner Bros.' 'permission for proprietary material' and that they 'work daily with the WB legal team.'" *Id.*

[5] Likewise, in *Apple Hill Growers v. El Dorado Orchards*, 2019 WL 5827365 (E.D. Cal. Nov. 7, 2019), the court found that, other than alleging certain corporate roles and ownership, the complaint "provide[d] no facts about specific actions taken" by the individual defendants. *Id.* at *3.

offered—and cannot offer—any rebutting facts, because they created the infringing events and merchandise, personally promoted the infringing events and merchandise via Random Tuesday's Internet presence as well as their own, and, importantly, personally made (false) representations regarding the infringing nature of the business.  *See* Cmplt. ¶¶ 8, 15-18, 24.

Courts are inclined to find personal liability where, as here, the individual defendants are the sole owners and executives and are solely responsible for the day-to-day operations of the infringing company.  In *Digby Adler*, for example, the court found an individual defendant personally liable because he was responsible for, among other things, advertising and marketing, managing the website and Internet accounts, day-to-day operations, and supervising employees, and because he also personally participated in events leading to the infringement.  *Digby Adler*, 79 F. Supp. 3d at 1104-05.

Similarly here, Brian and Dawn Biggs are and have been responsible for advertising and marketing, managing the website and Internet accounts, day-to-day operations, and—to the extent there are any other employees—Brian and Dawn Biggs unquestionably supervise them.  Moreover, as alleged in the Complaint, Brian and Dawn Biggs personally participated in events leading to the infringement as well as the infringement itself.  *See* Cmplt. ¶¶ 15-18, 24.

While Brian and Dawn Biggs complain that Warner Bros. has failed to provide sufficient facts, they noticeably do not deny that they are personally responsible for the infringement alleged in the Complaint, nor do they offer any alternative explanation for how the alleged infringement could have occurred or who else could have directed it.  *See* Biggs Mot. 3-5.  Indeed, Brian and Dawn Biggs have given no indication that the company has *any* other employees, let alone full-time, senior and/or managerial employees with the authority to independently carry out the unlawful actions alleged in the Complaint.  *See id.* And in any event, Random Tuesday cannot remotely be compared with the kind of

far-flung enterprise where a rogue employee might be able to engage in copyright or trademark infringement without the knowledge, direction, or control of the owners and chief executives of the business.

To the contrary, it is clear that no one at Random Tuesday *other than* Brian and Dawn Biggs conceivably *could have* directed the infringement.  *See* Cmplt. ¶¶ 15-18, 24.  The alleged infringing activities—from the branding of the running clubs themselves, to the content of the website and social media webpages, to the offering for sale of infringing merchandise—all are squarely within the bailiwick of the Chief Executive Officer and Chief Creative Officer.  *See id.*  There are no other plausible candidates.  And even if there were, for purposes of this Motion, Warner Bros. has adequately and specifically pled that Brian and Dawn Biggs "knowingly direct[] Random Tuesday, Inc. to offer infringing merchandise for sale and shipping ...."  *Id.* ¶¶ 15, 17.  This allegation alone more than meets the pleading requirements.

The Complaint allegations discussed above are reinforced by Random Tuesday's publicly filed (and judicially noticeable) federal tax forms, which confirm that the business does not have any other owners, compensated corporate officers, compensated corporate directors, or senior employees.  *See generally* Request for Judicial Notice ("RJN"), Exs. A-B; *see also* Biggs Mot. 2 (conceding Brian Biggs has worked full-time at Random Tuesday since 2016).  Indeed, in 2018, Brian and Dawn Biggs elected to pay themselves an annual salary of $100,000 *each*—presumably to compensate themselves for their extensive and direct participation in and control over all aspects of Random Tuesday's business.  RJN, Ex. B at 7; *see also id.*, Ex. A at 7 ($121,250 salary for Brian Biggs in 2017; $78,750 for Dawn Biggs).[6]

---

[6] Because Brian and Dawn Biggs can be held personally liable for direct participation, the Court need not reach any "piercing the corporate veil" analysis, and Warner Bros. need not satisfy those requirements.  *See Daimler AG v. A-Z Wheels LLC*, 2017 WL 9854427, at *3 (S.D. Cal. Nov. 27, 2017); *see also PMC*,

In short, Brian and Dawn Biggs are the only founders, the only owners, the only compensated officers, the only compensated directors, and quite possibly the only full-time employees—certainly the only employees with decision-making authority.  *See generally* RJN, Exs. A-B; *see also, e.g.*, Cmplt. ¶¶ 15-18, 24; Biggs Mot. 2; RT Mot. 1.  At a minimum, Warner Bros. has presented a facially plausible allegation that Brian and Dawn Biggs knowingly approved, actively participated in, and/or personally directed the infringing activities described in the Complaint, thereby making them personally liable as joint tortfeasors.  *See Conservation Force*, 646 F.3d at 1242 (plaintiffs need only state "facially plausible claim to relief" to survive a motion to dismiss).

**C.    Warner Bros. Has Adequately Pled Its Unfair Competition and False Advertising Claims under Federal and California Law.**

Defendants in their respective Motions[7] attack Warner Bros.' California unfair competition and false advertising claims, as well as its Lanham Act false advertising claim, with a scattershot array of technical pleading arguments that misstate the relevant law and fail to undermine the viability of any of the challenged claims.  *See* Biggs Mot. 6; *see also* RT Mot. 13-16.  Warner Bros. addresses all of these arguments here.

---

*Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1380 (2000).  However, to the extent this analysis is relevant, full discovery would be the appropriate process.

Random Tuesday's Form 990s strongly suggest that discovery would likely reveal this to be an appropriate case to disregard the corporate form altogether. Defendants concede they were first contacted by Warner Bros. in 2017.  RT Mot. 1.  It surely is no coincidence that, at the same time a large potential litigation adversary and judgment creditor appeared on the scene, Brian and Dawn Biggs began paying themselves large annual salaries while allowing the company to become significantly undercapitalized.  *See* RJN, Ex. B at 1 (indicating the accumulated deficit jumped in 2018 such that net assets were *negative* $307,997).

[7] Because Defendants Random Tuesday, Brian Biggs, and Dawn Biggs make this argument collectively, for ease of reference, Warner Bros. refers to Defendants collectively herein.

### 1.    The Complaint Alleges a Viable California UCL Claim.

Defendants argue the Complaint fails to satisfy the heightened pleading requirements of Rule 9(b) in alleging a viable claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.  See* RT Mot. 13-16; Biggs Mot. 5.  It is well established, however, that there are three possible prongs for establishing liability under Section 17200: an "unlawful" prong, an "unfair" prong, and a "fraudulent" prong.  *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal. 4th 163, 180 (1999).  Here, for the reasons set forth in Sections III.B and III.C of the RT Opposition, Warner Bros. has alleged viable claims for trademark infringement and trademark dilution, and it is well settled that a violation of the Lanham Act may serve as the predicate "unlawful conduct" required to establish a violation of California's UCL.  *See, e.g.*, *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 165 F. Supp. 3d 937, 953 (S.D. Cal. 2016) (Lanham Act violation satisfied "unlawful" prong of UCL); *Plascencia v. Lending 1st Mortg*., 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008) ("Violation of almost any federal, state, or local law may serve as the basis for a UCL claim.").

A plaintiff need only satisfy one of the statute's three prongs to state a viable claim.  *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010).  There is no requirement that a UCL claim based on the "unlawful" prong of the statute satisfy Rule 9(b).  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105-06 (9th Cir. 2003).  Likewise, Defendants' objection that Warner Bros. has not alleged "an incipient violation of an antitrust law" or other anticompetitive conduct under the "unfair" prong is beside the point.  RT Mot. 15.  Because the Complaint's robust allegations of trademark infringement and dilution satisfy the "unlawful" prong of the statute, there is no basis for dismissal of the UCL claim.[8]

---

[8] Defendants also seek dismissal of the UCL claim "to the extent WB seeks monetary damages as a remedy."  RT Mot. 16.  Warner Bros. is not seeking monetary damages as a remedy for its UCL claim: it simply alleged in the body of the Complaint that it has suffered "pecuniary damages," Cmplt. ¶¶ 105, 111, 117,

### 2.    Warner Bros. Has Adequately Alleged False Advertising.

Defendants contend that Warner Bros.' false advertising claims under the Lanham Act and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, also must be dismissed for failure to comply with Rule 9(b)'s heightened pleading requirements.  As pled, however, Warner Bros.' claims do not depend on a finding of fraud and therefore are not subject to a heightened pleading requirement.  *See EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010).  And even if its claims were governed by Rule 9(b), Warner Bros. has satisfied the requirement.  Its Complaint puts Defendants on "fair notice" of its claims, which is the operative pleading standard for any false advertising claims subject to Rule 9(b).  *See Bobbleheads.com, LLC v. Wright Bros., Inc*., 259 F. Supp. 3d 1087, 1096 (S.D. Cal. 2017).

As explained above, Warner Bros. has sufficiently alleged that Brian and Dawn Biggs direct and control all of the relevant activities of Random Tuesday, and that they have participated directly in the conduct that forms the basis of Warner Bros.' claims.  Accordingly, Defendants' assertion that the Complaint contains "absolutely no allegations that Brian or Dawn Biggs made any misrepresentation" is incorrect for several reasons.  Biggs Mot. 6.  First, a company can only speak through its officers, employees, or agents, and here the ones doing the speaking invariably are Brian and Dawn Biggs.  Second, as explained below, a fraudulent misrepresentation is not necessarily required to state a claim under California's unfair competition or false advertising laws, and

---

130, 139, 144, 150, in order to satisfy the statutory requirement that a plaintiff show economic injury in the form of "lost money or property."  *See* Cal. Bus. & Prof. Code § 17204; *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 321-22 (2011) (to have standing, a UCL plaintiff must allege pecuniary harm).  In contrast to the *Conte v. Jakks Pac, Inc.*, 2012 WL 6115632 (E.D. Cal. Dec. 10, 2012) case cited by Defendants, Warner Bros. here has sought injunctive relief as a remedy for its UCL claim.  *See* Cmplt. 50-52.  Including an allegation to satisfy the UCL standing requirement is not grounds for dismissal of the claim.

consequently Rule 9(b) does not apply to such claims.

The Ninth Circuit has not addressed whether Rule 9(b) applies to the Lanham Act, and courts in this jurisdiction appear split over the issue. *See Bobbleheads.com*, 259 F. Supp. 3d at 1095 (collecting cases). Nevertheless, even when courts do apply the Rule 9(b) standard to Lanham Act claims, they do so *only* for Lanham Act claims grounded in fraud. *See EcoDisc Tech.*, 711 F. Supp. 2d at 1085; *see also Rolex Watch U.S.A., Inc. v. Agarwal*, 2012 WL 12886444, at *5 (C.D. Cal. Dec. 17, 2012) (if Rule 9(b) applies to the Lanham Act at all, it is only for claims "based on a pattern of fraudulent conduct"). Contrary to Defendants' assertion, not all false advertising claims are "inherently grounded in fraud." RT Mot. 13; *see also Oracle Am., Inc. v. TERiX Computer Co., Inc.*, 2014 WL 31344, at *10 (N.D. Cal. Jan. 3, 2014) (declining to apply Rule 9(b) to false advertising claim under the Lanham Act); *see also Vess*, 317 F.3d at 1105 ("Where averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not mean that no claim has been stated.").

For California state law claims, there is no particular heightened pleading standard for garden-variety false advertising claims. *See Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1164-74 (2018) (considering, in part, common sense and the misleading nature of the brand name, and calling the analysis a question of fact). "[T]o state a claim under either the UCL or the [FAL], based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." *Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 914-15 (2016) (second alteration in original) (citation and quotation omitted). Warner Bros. has met that showing, by describing with specificity which products and advertisements were likely to mislead the public. Warner Bros. has provided examples of statements and products likely to deceive consumers, including medals replicating protected images and marks, Cmplt. ¶¶ 69-71, and apparel emblazoned with protected images and marks, *id.* ¶¶ 76, 78, 86, 89. Defendants

also use Warner Bros.' images and trademarked phrases across their website and social media webpages, thereby implying a false affiliation. *Id.* ¶¶ 68, 84, 91.

As these allegations show, even if Warner Bros.' claims were found to be grounded in fraud and subject to Rule 9(b), Warner Bros. has pled its claims with sufficient particularity. *See, e.g.*, *Bobbleheads.com*, 259 F. Supp. 3d at 1096 ("fair notice" of claims satisfies Rule 9(b) requirement); *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 636 (N.D. Cal. 2019) ("at the pleading stage the plaintiff need only allege specific misleading statements and explain why they are misleading"); *SPS Techs., LLC v. Briles Aerospace, Inc*., 2019 WL 6841992, at *9 (C.D. Cal. Oct. 30, 2019) (same). Warner Bros. has filed a 52-page complaint, wherein it describes in detail how and when Defendants used Warner Bros.' trademarks and copyrighted images to create a false impression of association, sponsorship, or endorsement. The Complaint even contains extensive photographic evidence and side-by-side comparisons. *See* Cmplt. ¶¶ 66-91.

Furthermore, courts have considered certain pre-litigation interactions and identification of infringement "enough to give Defendants fair notice of the alleged fraudulent conduct so that they can adequately defend against the charge." *Bobbleheads.com*, 259 F. Supp. 3d at 1096 (plaintiff had sent cease-and-desist letters identifying the infringement and where on the defendants' websites it existed). Here, as Defendants concede, Warner Bros. contacted Defendants about their infringing and misleading conduct long before filing this action and provided detailed examples of the misleading products and advertisements. *See* RT Mot. 1-2; *see also* Cmplt. ¶ 9. Defendants have long been on fair notice of the claims against them and cannot now assert that they are unable to adequately understand or defend against these claims.

### 3.    Warner Bros. Is Not Required to Plead Its Own Reliance.

Defendants assert that the UCL and FAL require Warner Bros. to plead its "own actual reliance." RT Mot. 15. But competitors—as opposed to consumers—

are not required to personally rely on a defendant's misleading statements in order to bring a UCL or FAL claim.  *See, e.g.*, *VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*, 2010 WL 1611398, at *2-3 (E.D. Cal. Apr. 20, 2010) (recognizing plaintiff was "injured by consumer reliance upon Defendant's misrepresentations," which "resulted in competitive harm and diverted sales").  Here, Warner Bros. has provided numerous examples of products that directly infringe upon and compete with Warner Bros.' own merchandise, as well as numerous examples of statements and images on Defendants' website and social media webpages that create a misleading and deceptive impression that Defendants' business activities and merchandise are sponsored by, approved by, or otherwise associated with Warner Bros.  *See, e.g.*, Cmplt. ¶¶ 66-91.  Moreover, an actual consumer has complained to Warner Bros. that she was induced to contribute substantial sums of money to Defendants' business because she mistakenly believed that Defendants were approved by and/or affiliated with Warner Bros.  *Id.* ¶ 8; *see also id.* ¶¶ 114, 142.  When the consumer raised concerns to Defendants, Defendants reportedly assured her that they had Warner Bros.' "permission for proprietary material."  *Id.* ¶ 8.

Ignoring these allegations, Defendants cite *In re Tobacco Cases II*, 46 Cal. 4th 298 (2009), a class action involving claims by consumers that they had been misled by cigarette advertising.  RT Mot. 15.  The *Tobacco Cases II* court addressed the requirement under Proposition 64 that a plaintiff asserting a claim under the UCL or FAL establish that she suffered a pecuniary loss of money or property as a result of the challenged statements.  *See Tobacco Cases II*, 46 Cal. 4th at 325-26; *see also* Cal. Bus. & Prof. Code § 17204 (actions may be brought by "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition").  In the context of a claim by consumers, the court held that the pecuniary loss element required a showing of the consumer's actual reliance on the statements at issue.  *Tobacco Cases II*, 46 Cal. 4th at 326.

In the context of a claim by a *competitor*, however, a requirement that the

plaintiff plead and prove its own personal reliance on an allegedly misleading statement makes little sense.[9]  As the court observed in *VP Racing*, "[t]he purpose of the UCL is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services."  *VP Racing*, 2010 WL 1611398, at *3 (citation and quotation omitted).  Thus, outside of a consumer claim, the required pecuniary loss element may be shown in other ways.  For example, a plaintiff could show the statements at issue are "likely to mislead or deceive" the public.  *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332 (1988); *see also Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 258 (2011) ("Unlike common law fraud, a UCL fraud claim can be shown even without allegations of actual deception, reasonable reliance and damage; what is required to be shown is that members of the public are likely to be deceived.") (citation omitted).

A plaintiff also may satisfy this economic injury requirement by showing that "a present or future property interest has been diminished."  *Kwikset*, *supra*, 51 Cal. 4th at 323.  In *Kwikset*, the California Supreme Court explained that an intellectual property owner would have standing to sue a counterfeiter under the UCL, even though the owner would not personally be fooled or misled by the fake.  *Id.* at 329-30 ("A counterfeit Rolex might be proven to tell the time as accurately as a genuine Rolex and in other ways be functionally equivalent, but we do not doubt the consumer (*as well as the company that was deprived of a sale*) has been economically harmed by the substitution in a manner sufficient to create standing to sue.") (emphasis added); *see also Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1173-74 (N.D. Cal. 2015) (finding allegations of lost customers and sales and damage to brand sufficient).

Thus, Warner Bros. has sufficiently alleged the harm it has suffered due to consumer reliance on Defendants' misleading and deceptive statements about

---

[9] And the *Tobacco Cases II* court expressly declined to comment on how this requirement should be construed in other kinds of cases.  *See id.* at 325 n.17.

1    sponsorship, approval, and/or affiliation, and Defendants' "reliance" argument

2    provides no basis for dismissal.[10]

3    **D.**    **Warner Bros. Has Adequately Pled Its Trademark and Copyright**

4         **Claims Against Brian and Dawn Biggs, and the Complaint Does Not**

5         **Establish that Any Claim Is Barred by the Statute of Limitations.**

6         On pages 6 through 9 of their separate Motion, Brian and Dawn Biggs

7    mostly cross-reference the RT Motion and incorporate its arguments by reference.

8    *See* Biggs Mot. 6-9.  Warner Bros. has addressed those arguments in Sections

9    III.B, III.C, and III.E of its RT Opposition, and, as explained above, incorporates

10   those opposing arguments by reference herein.  RT Opp'n 7-23.  Woven

11   throughout the Biggs Motion, however—and throughout the RT Motion as well—

12   is a specious statute of limitations argument that will be addressed here.[11]

13        As a threshold matter, Defendants' limitations argument turns fundamental

14   pleading rules on their head.  Defendants pretend it is incumbent upon a plaintiff to

15   specify precisely when every alleged act by a defendant took place or risk

16   dismissal at the pleading stage based on the statute of limitations.  That is exactly

17   backwards.  In fact, when a motion to dismiss is based on the running of a statute

18   of limitations, the running of the statute must be "apparent on the face of the

19   complaint" and the motion "can be granted only if the assertions of the complaint,

20   read with the required liberality, would not permit the plaintiff to prove that the

21   statute was tolled," *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.

22   1980), or that the claim was not otherwise time-barred, *Pak's Trading Europe B.V.*

23   *v. Target*, 2018 WL 8333362, at *5 (C.D. Cal. July 5, 2018).[12]

24

25   [10] Defendants also raise an unsupported statute of limitations argument.  RT Mot.
     13, 16.  Warner Bros. addresses this argument below in Section II.D.

26

27   [11] Because Defendants also make these arguments collectively, for ease of
     reference, Warner Bros. refers to Defendants collectively herein.

28   [12] *See also generally* Judge Virginia A. Phillips & Judge Karen L. Stevenson, CAL.
     PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL Ch. 9-D (The Rutter Group, updated

                                              16

Here, Defendants do not even attempt to show—and cannot show—that the running of the four-year limitations period for any of the disputed claims is "apparent on the face of the complaint," such that a motion to dismiss on this basis can be granted.[13]  Aside from being premature and improper on a motion to dismiss, Defendants' statute of limitations argument also appears to be grounded in a fundamental misconception as to how statutes of limitations operate.

The limitations period for Lanham Act claims,[14] common law unfair competition (passing off) claims, and common law trademark infringement claims is four years.[15]  *See, e.g.*, *Move Press, LLC v. Peloton Interactive, Inc.*, 2019 WL 4570018, at *3 (C.D. Cal. Sept. 5, 2019); *Luna Distrib. LLC v. Stoli Grp. (USA), LLC*, 2018 WL 5099277, at *11-12 (C.D. Cal. July 10, 2018); *Eliminator Custom Boats v. Am. Marine Holdings, Inc.*, 2007 WL 4978243, at *3, *7 (C.D. Cal. Nov.

---

Apr. 2020).

[13] To the extent Defendants desire to dispute the accrual and/or discovery dates of Warner Bros.' claims, or seek to prove that they ceased certain infringing conduct more than four years before the Complaint was filed—neither of which they have even attempted to do in their Motions—those are factual issues to be developed during discovery and cannot be decided on a Rule 12 motion.

[14] Some courts have suggested that Lanham Act claims are governed solely by laches, not by a statute of limitations.  *See Herman Miller, Inc. v. Blumenthal Distrib., Inc.*, 2019 WL 1416472, at *20 (C.D. Cal. Mar. 4, 2019) (citing *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 836 (9th Cir. 2002)). Defendants presumably did not raise a laches argument because it would require a fact-laden consideration of the reasonableness of any delay in bringing suit and the prejudice, if any, suffered by Defendants.  *See id.* at *20-21 (noting the "application of laches depends on a close evaluation of all the particular facts in a case" and therefore is "seldom susceptible of resolution by summary judgment").

[15] In arguing for a two-year limitations period for the common law trademark infringement claim, Defendants rely on dicta in an apparent outlier opinion, *V.V.V. & Sons Edible Oils*, which referenced a sixty-year-old case that in turn cited an outdated and/or inapplicable statute.  *V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas LLC*, 2016 WL 1268008, at *10 (E.D. Cal. Mar. 31, 2016) (citing *Murphy v. Hartford Acc. & Indem. Co.*, 177 Cal. App. 2d 539, 544 (1960)). Moreover, the *V.V.V. & Sons Edible Oils* court found the claim at issue timely "[r]egardless of whether a four year or two year statute of limitations applies."  *Id.*

5, 2007); *Bigfoot Ventures, LLC v. Compania Mexicana de Aviacion, S.A. de C.V.*, 2010 WL 2985832, at *3 (S.D. Cal. July 23, 2010).  As Defendants point out, the limitations period for claims under California Business & Professions Code Sections 17200 and 17500 and for federal and state dilution claims is also four years.  *See, e.g.*, Cal. Bus. & Prof. Code § 17208; *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 n.11 (9th Cir. 2006); *see also* RT Mot. 16.

In order for a claim to be subject to dismissal on this basis, all of the conduct by Defendants alleged to support that claim would have to have occurred outside the limitations period.  *E.g.*, *Chloe SAS v. Sawabeth Info. Servs. Co.*, 2014 WL 4402218, at *3 (C.D. Cal. Sept. 5, 2014) (stating that even if one infringing act is outside the limitations period, another infringing act inside the period "might independently redeem that particular trademark").  That is not true for any claim in the Complaint, and Defendants do not even attempt to make such a showing.  In fact, all of Warner Bros.' trademark claims are based entirely on conduct by Defendants that occurred within the past four years.  Defendants do not identify a single act of alleged infringement that occurred entirely outside the limitations period, let alone establish that an entire claim is based on time-barred conduct.

Defendants appear to assume that in the case of a continuing violation or an ongoing course of infringing conduct, Warner Bros. is somehow barred from suing over conduct that occurred *during* the limitations period, if the allegedly infringing course of action commenced more than four years ago.  That is not how the statute of limitations works for intellectual property claims.  To the contrary, a trademark owner may sue over any act of infringement that occurred during the relevant limitations period.  *See, e.g.*, *Chloe SAS*, 2014 WL 4402218, at *4-5; *Sonoma Foods v. Sonoma Cheese Factory*, 2007 U.S. Dist. LEXIS 96733, at *8-9 (N.D. Cal. Apr. 3, 2007).  The statute of limitations may cut off the relevant damages period, preventing the owner from recovering damages attributable to acts that occurred outside the limitations period, but it does not bar a claim entirely.  *See,*

*e.g.*, 6 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:33 (5th ed. June 2020) ("Usually, infringement is a continuing wrong, and a statute of limitations is no bar except as to damages beyond the statutory period."); *Chloe SAS*, 2014 WL 4402218, at *4-5; *Sonoma Foods*, 2007 U.S. Dist. LEXIS 96733, at *8-9; *see also Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1102, 1107 (C.D. Cal. 2016) (affirming that the discovery rule and the separate-accrual rule (or continuous accrual doctrine) apply to California UCL claims).

Defendants' position is completely without support—and for good reason, as it would lead to unreasonable and wasteful results.  Trademark and copyright owners would be required to sue early and often, without taking time to assess whether ongoing infringing conduct posed a significant enough problem to invest in litigation, or to explore an amicable resolution that does not require involving the court system.

As the Supreme Court explained in the copyright context: "If the rule were, as MGM urges, 'sue soon, or forever hold your peace,' copyright owners would have to mount a federal case fast to stop seemingly innocuous infringements, lest those infringements eventually grow in magnitude.  Section 507(b)'s three-year limitations period ... allows a copyright owner to defer suit until she can estimate whether litigation is worth the candle.  *She will miss out on damages for periods prior to the three-year look-back, but her right to prospective injunctive relief should, in most cases, remain unaltered*."  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 682-83 (2014) (emphasis added) (citation omitted).  Similarly, "a trademark owner is not required to constantly monitor every nook and cranny of the entire nation and to fire both barrels of [its] shotgun instantly upon a possible trigger."  *QS Wholesale, Inc. v. Rox Volleyball, Inc.*, 2015 WL 4484219, at *7 (C.D. Cal. July 19, 2015) (alteration in original) (citation and quotation omitted).

Defendants further assert that, with two exceptions, Warner Bros. "neglected to provide dates in connection with any of its claims."  RT Mot. 19.  That assertion

is both irrelevant and demonstrably false.  It is irrelevant because, as explained above, a plaintiff is not required to specify the date of each and every unlawful act alleged in a complaint or face dismissal on limitations grounds at the pleading stage.[16]  On the contrary, as explained above, a Rule 12 motion to dismiss can be granted based on statute of limitations grounds only in the rare case where all facts necessary to establish the limitations defense *appear on the face of the complaint*. *See Jablon*, 614 F.2d at 682.  Defendants do not point to any allegations in the Complaint that affirmatively establish that an entire claim is time-barred, and there are no such allegations.

Defendants' assertion is also false in that it ignores the numerous occasions throughout the Complaint where Warner Bros. does identify the approximate time when Defendants engaged in various acts of infringement, including as follows:

- In late 2018, Defendants "introduced a proliferation of merchandise in their online store that made prominent use of the HP Marks," including "a line of trucker hats that feature close variations of the Hogwarts house names," Cmplt. ¶ 81;

- In connection with a 2018 race event, Defendants "have offered for sale apparel bearing a copyrighted image of the 'Fluffy the Dog' character from the *Harry Potter* fictional universe," *id.* ¶ 78;

- Defendants continue to include a "Perfect Prefect Hall of Fame" that uses "themes, styles, images, and other intellectual property owned by Warner Bros.," *id.* ¶ 80 (images of example previous Perfect Prefect Hall of Fame);

- Following their January 2019 name change, Defendants "have continued to sell water bottles, stickers, magnets, Christmas

---

[16] Yet this appears to be just what Defendants seek.  *See* RT Mot. 19 (asserting that Warner Bros. did not put enough specific dates in the Complaint and therefore the dilution claims "should be seen as time-barred and be dismissed").

ornaments, and other merchandise featuring the Hogwarts Running Club name and crest," *id.* ¶ 73;

- Defendants "recently began offering for sale dog tags emblazoned with the HOGWARTS variation 'Dogwarts,' as well as variations of the Hogwarts House names," and with messages referencing the MINISTRY OF MAGIC, *id.* ¶ 81; and

- "Defendants have recently hosted and promoted several 'virtual run' races that conspicuously trade on the HP Marks and their popular appeal," including an August 2019 race centered on the popular *Harry Potter* magical creature, the "Pygmy Puff"; a September 2019 race themed "Platform Year Six"; a January 2020 race centered on famous *Harry Potter* characters' "escape from Gringotts and the freeing of the Ukrainian Ironbelly dragon"; and a March 2020 race themed "Undesirable No. 2," a reference to titular character Harry Potter that used the Ministry of Magic logo, *id.* ¶¶ 82-86.

Because Defendants fail to establish that Warner Bros.' claims are time-barred, and that this time-bar is apparent on the face of the Complaint, this Court can and should reject Defendants' statute of limitations argument.

## III.   CONCLUSION

For all of the reasons set forth above and in the RT Opposition, Warner Bros. respectfully requests that the Court deny in its entirety the separate Motion to Dismiss filed by Brian and Dawn Biggs.  To the extent Brian and Dawn Biggs alternatively move to strike or move for a more definite statement, these motions should also be denied.  If, however, the Court finds the Complaint deficient in any way, Warner Bros. respectfully requests leave to amend to cure such deficiency.

1  Dated:  July 3, 2020                    JENNER & BLOCK LLP

2

3                                                     */s/ Andrew J. Thomas*

4                                          Andrew J. Thomas

5

6                                          Attorneys for Plaintiff
                                           WARNER BROS. ENTERTAINMENT INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WARNER BROS.' OPPOSITION TO BRIAN AND DAWN BIGGS' MOTION TO DISMISS